A. M. STACK v. N. M. PEPPER, et al.

*Action of Trespass Quare Clausum Fregit—Boundaries— Survey—Presumption as to Mode of Survey—Surface and Perpendicular Measurement.*

1. While the surface and not the level or horizontal mode of measurement is generally adopted in surveys, and the general presumption is that a survey of the surface was contemplated by the parties to a deed, yet that presumption prevails only where it appears feasible and reasonable to have pursued that course.

2. Where a line of survey crossed a perpendicular cliff at a place where it could not be climbed, and to give the quantity of land called for by the survey and to take the line to a boundary shown to have been marked in an old survey, it was necessary to exclude the distance up the face of the cliff, it was not error to instruct the jury to exclude it in determining the boundary.

ACTION FOR DAMAGES for alleged unlawful entry upon land and cutting and carrying away wood, tried before *Brown, J.*, at Fall Term, 1895, of STOKES Superior Court. A verdict was rendered for plaintiff, but judgment not having been entered thereon at that term, judgment *nunc pro tunc* was entered at Fall Term, 1896, by *Hoke, J.*

On the trial the following were the issues and findings:

"1. Did defendant wrongfully enter and trespass upon the land whereof the plaintiff is seized and possessed, as alleged by the plaintiff? Ans., 'Yes.'

"2. If so, what damage has plaintiff sustained? Ans., 'One penny.'"

Plaintiff introduced in support of his title a grant from the State to Gottlieb Shober, original survey and plat made by Joseph Cloud, upon which the grant was issued, certified by the Secretary of State, which is called the

" Cloud survey." There was also used on the trial what was called " the Court survey and plat ; " deed from Shober to Pickering for 3,560 acres, dated July 17, 1795, containing same boundaries as in Shober grant; deed from Sheriff to E. Shober, October 13, 1813, for 640 acres, described as Section 392 of said Shober grant ; the will of E. Shober, dated April 27, 1846, devising said land to F. E. and C. E. Shober, and then a deed from them for same land, dated July 23, 1892.

S. M. Shelton testified for the plaintiff : " I have been a practical surveyor for 18 years ; have been county surveyor and have surveyed these lands several times. The boundaries in the Shober grant correspond with and are the same as delineated on the Cloud survey and plat from the office of the Secretary of State, and are the same as delineated on the Court survey and plat. The deed from Shober to Pickering contains the same boundaries, and the deed from Banner, sheriff, to E. Shober has the same boundaries as Section 392 of the Cloud survey and plat, and is a part of the land comprised in the Shober grant, and is the tract embraced within the red lines on the Court survey and plat. The deed from F. E. and C. E. Shober to plaintiff embraces the same land. The modern surveys agree exactly with the old survey in evidence in this case. I don't know, myself, whether the disputed land in this case is in the Shober grant or not ; it depends upon how you run and survey that grant. If I begin at the dogwood and run the course and distance, it throws the disputed land outside the Shober grant, provided I include the perpendicular of a very steep cliff as part of the 23 and ¾ chains. The cliff is on the line running from L to M on the Court survey. It comprises three or four rock boulders nearly straight up, but not exactly so. I climbed up it, but with difficulty, and had to pull off my shoes to do so.

If I don't count the distance up the cliff, then the 23¾ chains will carry me to M in the red line, and that will throw the disputed land in the Shober grant. If I do include the distance from the bottom of the cliff to its top as a part of the 23 and ¾ chains, the disputed land will not be in the Shober grant. Omitting the distance up the cliff, the 23 and ¾ chains goes exactly to M in the red line, which puts the land in the Shober grant. I have measured and tested, by the scale on the Cloud survey and plat, all the lines on said plat, and find that they are all correct, if you measure from L to M on the red line without including the height of the cliff. The line from O to M on the Court plat, as called for in plaintiff's deed and in sheriff's deed, reaches pointers at N on red line near chestnut oak, and I found on the red line from N to M several old-marked trees and some newly marked ones. I ran the red line from N to M for some distance, stopped and marked the place, then went to M and ran the red line back towards N. and struck the marked place. I ran from the northeastern corner of Section 393 on the Cloud survey west and struck the red line on the Court survey at N. On the black line from N to M on the Court survey I found two marked trees. I blocked one and found the mark 43 years old. Section 392 of the Shober grant, Cloud's survey, contains 640 acres. Within the red lines on the Court survey plaintiff's tract contains 640 acres, but within the black lines it contains only 513 acres. The Shober grant, run on red line from M to N, includes the disputed land. The defendant's land lies north of the Shober grant. The land in dispute contains 127 acres. I reversed the lines of the grant and ran them with the same result."

A. M. Stack testified: " I know where N is on the red line. There are pointers there near a chestnut oak. I accompanied the surveyor to M; saw on the red line N

to M marked trees—some old and some new. The new marks the defendant Pepper told me he made in fixing to divide up his estate. Pepper said my deed ran up to the red line, but that the Shober grant did not, as he contended. The defendants cut down some trees on the east end near N, just north of the black line and on the land in dispute, shortly before the bringing of this suit. They were worth one dollar. The cliff spoken of by the surveyor (Shelton) is such that you cannot go up it at the place where the line of the Shober grant strikes it. You have to go east two chains to climb it, at a sort of gap."

S. B. Taylor testified: That he knows the place where the pointers and the chestnut oak are; that soon after the war he was with a party surveying adjacent lands, and at that time there were old-marked trees along the red lines from N to M on Court plat.

L. B. Simmons testified: "I was present six years ago when Nat. Pepper and James Pepper chopped some new marks on a line, but don't know what line it was; they said they were arranging to divide property. I told Mr. Stack about it and showed him where it was."

The defendant offered no evidence. The defendant moved to non-suit the plaintiff—

"First, because the plaintiff had shown no execution under which Banner, the sheriff, sold the land in controversy or any land described in his deed.

"Secondly, because, in any view of the testimony, the plaintiff had failed to show title."

The motion was denied and defendant excepted.

The court instructed the jury that as to whether they believed the testimony or not was a question for the jury, but that if they believed the evidence in this case to be true they should find the first issue in favor of the plaintiff and the second issue one penny. There was a verdict for

plaintiff as above set out, and from the judgment thereon defendant appealed, assigning as error his Honor's charge to the jury that if they believed the testimony to be true they should find the issues for the plaintiff.

*Messrs. A. M. Stack, J. T. Morehead* and *Jones & Patterson*, for plaintiff.

*Messrs. W. W. King, A. E. Holton* and *H. R. Scott*, for defendants (appellants).

AVERY, J. : It is a fact generally known and acknowledged that in all of the early surveys of entries, and in most of the latter ones, made in this State, the surface and not the level or horizontal mode of measurement is shown to have been adopted. This is the general rule, and the courts take notice of this fact and presume that lands embraced in grants and deeds were originally measured in that way, both because it is a matter of general knowledge that such has been the custom and because the judicial annals of the State are corroborative of that fact. *Duncan* v. *Hall*, 117 N. C., 443. The surveyor testified to this custom as universally adopted by practical surveyors.

While, however, the presumption is generally that a survey of the surface was contemplated and adopted by the parties to a deed, that presumption prevails only where it appears feasible and reasonable to have pursued that course. On the contrary, the courts will not assume that the surveyor and chain-bearers procured ladders and climbed over a rugged boulder or cliff situated as in this instance, but that they adopted practicable methods. It is well known that where surveyors encounter a river at a point where it is lined with rocks rising above the surface, and it proves impassable by ordinary methods, the distance across is determined by making an off-set and running up and down from the actual point of crossing, not by climbing over the

sides of the rocks.   It was not improper for the court to instruct the jury in this instance that the surveyor, if his testimony was believed, ascertained the distance, and thereby fixed the location of the disputed corner by the correct mode of measurement.  The surveyor, Shelton, testified that if he included the distance from the bottom of the cliff up its perpendicular surface to the top as a part of the 23¾ chains called for the disputed land would not be embraced within the boundaries of the deeds under which plaintiff claimed title ; but if, instead of measuring up this surface, he walked around and measured from the top of the cliff, the defendant would, under that theory of surveying, be a trespasser.   The distance up the cliff could only have been ascertained by letting fall a line from the top to the bottom, as the surveyor was compelled to depart from his course to find a point where it was possible to even climb across it.   It is not to be presumed that the State of North Carolina sold to Shober by means of his grant the space represented by the perpendicular surface of this cliff.   The original surveyor did not find it necessary to ascend its surface in order to ascertain with accuracy what the State was selling.   But very steep mountain sides are often very valuable for timber as well as for agricultural purposes, and when a line crosses a steep mountain or succession of hills the grantee would get from the State, for cultivation, by horizontal measurement, a number of acres largely in excess of that estimated upon the basis of surface measurement.   *Duncan v. Hall, supra.*   In the case before us, however, the measurement adopted by the surveyor and sanctioned by the court gave the grantee, under the operation of the maxim *cujus est solum ejus est usque ad coelum*, the ownership of the perpendicular cliff, and whatever of minerals, if any were imbedded in it, without robbing the State of the price of a single acre of cultivable land.

STACK v. PEPPER.

Where the elevation of the ground is very different at different points of a line, the grantee may start his lines towards the center of the earth from points nearer to each other than his points of departure would have been by horizontal measurement, but he will generally acquire title for every acre of surface for which he pays the State.

The undisputed testimony of the witnesses examined tended to show that the succession of deeds constituting plaintiff's chain of title embraced the land in dispute, and that the plaintiff had an actual possession of a part, and a constructive possession over the whole, of the land embraced within the boundaries of these deeds.    This is an action in the nature of trespass *quare clausum fregit*, not in the nature of trespass in ejectment.    In order to establish, *prima facie*, the right to recover, it was necessary, therefore, for the plaintiff to show possession in himself and a trespass upon his possession by the defendant, not, as in ejectment, an adverse occupancy by the latter.    If the testimony was believed, the defendant entered upon the land embraced within the boundaries of plaintiff's deeds, as run without estimating the distance up the face of the cliff, and cut and removed timber trees ; so that, if the testimony was credible, the *locus* where the trespass was committed was within the limits of plaintiff's lands, to which he had, *prima facie*, shown both title and possession, and the plaintiff was entitled to recover at least the nominal damages awarded.

As we understand the case and the argument, the assignment of error that has been discussed is the only one relied upon by the defendant, of which, according to the transcript, he was entitled to the benefit.    It ought to be needless to state the appellate court is confined to the record.    There was no error.

No Error.