R. D. GILMER, Trustee, v. J. C. YOUNG et al.

(Decided April 12, 1898).

*Contract for Purchase of Land—Contract—Accurate Survey—Horizontal Survey—Custom—Notice.*

1. Where a contract for sale and purchase of land provided that it should be paid for according to the number of acres contained in the tract, to be ascertained by an "accurate survey;" *Held,* that the survey should be by horizontal and not surface measurements.

2. A custom, in order to amount to notice to all persons, must be general, like the common law; and hence, a local or general local custom is not notice to any one unless there be actual knowledge of it, and it will not be considered as having entered into a contract without such knowledge being shown.

FURCHES, J., dissents *arguendo,* in which DOUGLAS, J., concurs.

CIVIL ACTION tried before *Brown, J.,* at Spring Term, 1897, of HAYWOOD Superior Court. The action was brought to recover $1,205.00, the alleged balance of the purchase price of a large boundary of land contracted to be bought by the defendant at so much per acre, the number of acres to be ascertained by an accurate survey. The amount claimed was the difference between the price of the acreage ascertained by two methods of survey—the surface and horizontal—the plaintiff insisting upon the former and the defendants upon the latter as the correct method.

It was admitted that all the works on surveying lay down the level or horizontal method as the correct mathematical mode for ascertaining the acreage in a given area and boundary.

It was admitted at date of the contract for purchase and long before and since the defendants were residents and citizens of the State of New York.

The plaintiff tendered the following issues to be submitted to the jury.

1st. What is the custom and usage of the locality with reference to the matter of computing acreage in surveys of large boundaries of land?

2d. Is the said custom or usage level or surface measurement?

The plaintiff contended and offered to prove that nearly all Western North Carolina was originally granted by the State in several large tracts containing 176,000 acres; another 250,240 acres; another over 300,000 acres, and others containing 50,000 acres.

That the laws of the State providing for the manner of taking up and surveying public lands did not declare how they should be surveyed; that these grants were issued nearly one hundred years ago; that they were all originally surveyed by surface measurement. This the plaintiff proposed to show by introducing witnesses who have several times run the lines of said large grants; and that the boundaries thereof can only be located by surface measurement.

Also, that the lands enclosed in these grants have been sold to many parties, and that all these surveys were made by surface measurement. Plaintiff also proposed to prove by old citizens that the general custom in Western North Carolina has been to survey lines and lands by surface measurement; that the lands sold to defendant were a part of one of these large grants, and that all the lands adjoining same, both small and large boundaries, were surveyed by surface measurement, and that in the section where these lands are situated it is a universal custom.

The plaintiff admitted that he did not allege or claim that defendants had any actual knowledge of such al-

leged custom at or before entering into the written contract; that plaintiff had no evidence to offer fixing defendants with such actual knowledge, but that plaintiff contended and proposed to show that the defendants were in this country several times before purchasing, and had an opportunity to find out what the custom was as to measurement in this locality, and that it differed from the general rule in the books in that it was surface measurement here—that defendants spent several days riding around the country conversing with the citizens, and plaintiff contended that if defendants had enquired they could have ascertained what the custom was in this locality with reference to manner of measurement. The plaintiff admitted that he did not at any time mention or call defendants' attention to this alleged different local custom until long after contract had been executed. The defendants objected to issues. The Court declined to submit the issues tendered by plaintiff and, therefore, excluded the evidence offered by plaintiff. To this the plaintiff excepted.

Upon an intimation by the Court of the opinion that plaintiff could not recover, and that the horizontal method was the proper method of surveying lands, the plaintiff submitted to a non-suit and appealed.

*Messrs. W. T. Crawford* and *A. C. Avery* for plaintiff (appellant).
*Mr. W. J. Welsh* for defendants.

FAIRCLOTH, C. J.: The object of this action is to ascertain the true number of acres in two large tracts of land. It was admitted that the boundaries were all located and undisputed, that the purpose of this action was to determine the number of acres within said bound-

aries, and that the only question was whether the acreage was to be computed by surface measurement or by level or horizontal measurement, according to the rules laid down in the standard works on surveying. The contract was to pay a certain price per acre for all the acres within the admitted boundaries. One clause of the contract was : "Immediately upon the decision of the question of title, an *accurate* survey shall be made of said tracts of land for the purpose of ascertaining the number of acres in each tract." Surveys were made on each theory and the difference ascertained. What is an *accurate* survey, therefore, is the important question.

All the standard authorities being against the method of surface measurement, and this being admitted, there seems to be but little for this Court to consider.

When the State granted its western domain in large bodies, there is no evidence whatever that the State adopted the surface measurement, and there is no ground for presuming that it did so, in spite of the fact that the authorities agree in laying it down that the horizontal measurement is the correct one. His Honor properly adopted the latter theory, from which the plaintiff appealed.

The difference in the two modes of measurement is material. Suppose the body of a large grant should be comparatively flat and level, and that several of the boundary lines should cross high points and deep ravines. Of course the calculation would show many more than the true number of acres, whereas the horizontal measurement would give the true acreage.

Looking for a corner according to course, distance, chops and the like is a different question from that of measuring the distance between two admitted corners, on a given course.

In *Stack* v. *Pepper*, 119 N. C., 434 although an argument was made in support of the surface theory, the opinion recognizes the horizontal theory by eliminating from the distance called for in the deed, the height of a cliff nearly perpendicular, which lay across the line. The argument of the inconvenience or impracticability of climbing a perpendicular cliff, is without force, because mathematics, being a scientific process, the surveyor, by offsets and like means, can accurately find the upper point of a perpendicular line from the last certain point fixed by the surveyor's stick.

The plaintiff offered evidence to show that in Western North Carolina it was customary to measure on the surface line, which was excluded. A custom, in order to amount to notice to all persons, must, like the common law, be general. A local, or general local custom, is not notice to any one, unless there be actual knowledge of it, and it will not be treated as entering into the contract without such knowledge. 27 Am. & Eng. Enc. of Law, 743 *et seq.* The defendant is a citizen of New York, and it is admitted that he had no notice of any alleged local custom when he purchased the land. There was no error.

Affirmed.

FURCHES, J., dissenting : In my opinion there is nothing in the fact that the contract stated that the number of acres were to be determined by an "accurate survey." This, to my mind, means no more than if it had said the number of acres should be determined by a survey of the lands. In either case an accurate survey would be meant. Were this not so, we would have to say that the contract for a survey, without adding the

GILMER *v.* YOUNG.

word "accurate," meant an inaccurate survey. This, to my mind, cannot be so.

I think the whole question depends upon what mode of making the survey should be adopted, whether the horizontal or surface measurement. Both modes are taught in works on surveying, and it is claimed by the defendant that both modes are in practice in North Carolina. The plaintiff offered to prove that the surface measurement was the mode used in Western North Carolina. This evidence was objected to and excluded. It seems to me that it should have been allowed. So far as my knowledge goes, I have never known a survey to be made of lands except by the surface measure; and in my opinion this is the general rule in this State, and if in any cases the horizontal mode has been used, they have been exceptions to the general rule. I do not mean by surface measure that you should go to the bottoms of deep ravines or climb perpendicular cliffs, but that you should follow the undulations of the surface.

It is said there is no evidence that surface measure was the mode adopted by the State in granting this land a century ago, and there is no reason to presume that surface measure was the mode adopted then. I do not agree to this proposition, as I cannot imagine a surveyor out in the wild mountains of Western North Carolina, a hundred years ago, where there were more free lands than anything else, except free Indians and wild animals, plodding along with a Gunter's chain and level, making a survey of a 25,000 or 150,000 acre grant of land.

For such reasons as these, I cannot agree to the judgment of the Court.

DOUGLAS, J.:  I concur in the dissenting opinion.