LEONARD .S. MORGAN v. ROYAL FRATERNAL ASSOCIATION.

(Filed 17 November, 1915.)

**1. Insurance, Life—Policies—Parol Contracts—Insurance Commissioner—Reinsurance—Evidence—Questions for Jury.**

A valid contract for life insurance may rest in parol unless in contravention of some statutory provision or some principle of public policy; and where there is evidence tending to show that an insurance company, having many policyholders in this State, has been condemned in its methods by the Insurance Commissioner and its further continuance in business is prohibited, and its manager organized a new company to take over. the business of the old company, collecting the premiums for such insurance on the old policies without issuing new ones except in acquiring new business; that it published this method by circular-letters to the policyholders in the retired company and to the Insurance Commissioner, who thereafter ordered that the policies in the new company should issue by that company to take up the policies issued by the old or retired one: *Held*, sufficient to be submitted to the jury upon the question whether the new company had agreed to become liable upon the policies of the retired company.

**2. Same—Old Policies in Force—Death of Insured—New Policies.**

Where an insurance company has been formed to take over the policies of a company whose continuance in business in North Carolina has been forbidden by the Insurance Commissioner, and which immediately puts into effect a method by which the old policies were continued in force and the premiums therefor collected by the new company, but which method was abandoned upon order of the Insurance Commissioner, and new policies accordingly issued: *Held*, that a policy of insurance thus continued in force by the new company and maturing by

the death of the insured before the issuance of the new policies directed by the Insurance Commissioner, was a valid and binding obligation on the new company which had taken it over in the manner stated.

**3. Insurance—Orders of Commissioner—Protection to Policyholders—Defenses.**

An order of the Insurance Commissioner that a life insurance company issue new policies for those it carried in force for a company prohibited by him from continuing to do business in this State is made for the protection of the policyholders, and cannot be taken advantage of by the insurer in denying an obligation arising upon the maturity of the old policy by the death of the insured before the new policies were issued.

**4. Principal and Agent—Insurance—Acceptance of Premiums—Ratification—Trials—Evidence—Questions for Jury.**

Where the question of authority of one to bind his principal, an insurance company, by accepting premiums from policyholders, is in controversy, and there is evidence that this money was remitted to and accepted with the knowledge of the company's general manager, authorized to bind the company by the transaction, and his testimony is conflicting but sufficient upon the question of establishing the local agency, it is for the jury to determine which part of his testimony is true, and it may find the fact of agency therefrom.

**5. Evidence—Inference of Fact—Appeal and Error.**

In an action involving the liability of an insurance company in taking over policies of another company that had been retired from the State, it is incompetent for the Commissioner to testify as to his "understanding" of the statements made in his presence by the parties, in relation to their agreement with each other, for in this form it is objectionable as being his own inference and not what the parties said.

**6. Same—Appeal and Error—Harmless Error.**

Objectionable testimony of a witness of his opinion of, or inference from, a fact becomes harmless when it appears that he has given this testimony substantially in an unobjectionable form.

**7. Evidence—Inference of Fact—Questions and Answers—Statements of Fact.**

The answer of a witness will not be held as error for expressing his inference from a fact, when taken as a whole it permits the interpretation that it was a statement of fact relevant to the issue.

**8. Evidence—Depositions—Exceptions—When Taken.**

Objection to the competency of testimony regularly taken by deposition, subject to cross-interrogatories, and opened and left on file before the trial, cannot, except by consent, be taken for the first time upon the trial while the depositions are being read.

**9. Evidence—Handwriting—Comparison of Signatures—Insurance Commissioner.**

Where the Insurance Commissioner has testified that he is familiar with the signature on a letter sought to be introduced in evidence in an action against an insurance company, from correspondence with the writer through his department relating to official matters, it is competent for him to say that the signature to the letter, from his knowledge and familiarity therewith, is genuine.

WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.

APPEAL by plaintiff from *Devin, J.,* at March Term, 1915, of FORSYTH.
Civil action to recover on a policy of insurance.

On a former trial of the cause, plaintiff recovered judgment, and defendant, having taken an appeal, a new trial was granted because of
the admission of a letter of one Lucy Ragsdale, an agent, which was held
to be hearsay and incompetent for reasons stated in the opinion of the
Court, reported in 167 N. C., 262.

This opinion having been certified down, a new trial was entered on
and, at close of testimony, on motion, there was judgment of nonsuit, and
plaintiff excepted and appealed.

*Alexander & Körner for plaintiff.*
*Hastings & Whicker for defendant.*

HOKE, J. We have carefully examined the record and are of opinion
that the judgment of nonsuit should be set aside and the issue as to
defendant's liability submitted to the jury. As the case goes back for
a new trial, we do not consider it desirable to state in detail or dwell
upon the testimony relevant to the issue and which makes in favor of
plaintiff's claim; but speaking generally, and as we understand the
record, there are facts in evidence tending to show that, in 1910 and
before that time, the Royal Benefit Society, an insurance company oper-
ating on the lodge system and having its home office in Washington,
D. C., had organized a large number of lodges in this State and there
were several thousand policies (10,000) in force here, one of which, held
by Sarah C. Morgan, who died in July, 1910, and of which present
plaintiff was beneficiary, is the policy sued on; that C. B. Bailey was
vice-president of this company and had been chiefly in charge and direc-
tion of the company's business in this State, being general agent for
North and South Carolina; that in May, 1910, the Insurance Commis-
sioner, becoming dissatisfied with the methods and standing of this com-
pany, revoked its license to do business in this State, and thereupon the
said C. B. Bailey and some others, the said Bailey being general mana-
ger, organized the defendant company on substantially the same system,
with the view and purpose of taking over policies in the old company,
caring for the interests of the policyholders therein who were resident
in this State and conducting an insurance business on substantially the
same plan as the older company; that it was a feature of the scheme and
plan not to issue new policies to the members of the former company,
but to allow them the benefits of membership and subject to the obliga-
tions of the same under the terms and conditions of the policies already
held by them, and to issue new policies only to new members; that the
new company was duly organized and licensed and immediately entered

into business, appointed agents, made collections, solicited new business, but did not issue directly any new policies or take in new members till August and September, this being after the death of Sarah C. Morgan, the holder of policy; that about the time the defendant company was organized, or soon thereafter, there was issued, on paper containing official letter heads giving names of the officers, including that of C. B. Bailey, third vice-president, and purporting to come from the home office of the old company and to be signed by M. B. Garber, the secretary of said company, circular-letters, one addressed to the collectors of the old company and one to the members, advising them in effect that the old company had gone out of business and that its officers and business "would be transferred over to the Royal Benefit Association, of which C. B. Bailey, at Charlotte, was general manager," etc. And the collectors were requested further to go right on and make collections in the name of the defendant company, changing the members' receipts, showing that this company was the recipient of the amount paid, etc. The circular to the members contained the statement also that: "We have deemed it advisable to transfer all the North Carolina members to the new organization as we believe that the interest of the members can best be served in that way"; that these circulars were sent to the office of the Insurance Commissioner; that C. B. Bailey was cognizant of their being issued, and approved the same and received copies, and the holder of the present policy also received one, and same were distributed generally throughout the State among parties interested. That among the agents appointed and acting for the new company was Lucy Ragsdale, who had served in like capacity for the old company when it did business, and, after issue and receipt of these circulars, there was paid, in the latter part of June, 1910, for Sarah C. Morgan to Lucy Ragsdale, agent of defendant, the fees due on the policy, amount $1.25, and this money, with other receipts, was sent to the new company and entered in its books at its headquarters at Charlotte, N. C., and same, pursuant to notice, were produced, showing an entry of a long list of names, including among them Sarah Morgan, policy No. 28343, payment for month of June, 1910, $1.25, together with a letter from company in acknowledgment of the remittance, beginning: "Your report of July collections has been received," etc., giving detailed statement of amounts.

It further appears that the Insurance Commissioner disapproved of the methods suggested, by which the old members were to be carried by the new company under the policies which they held, on the ground that it did not sufficiently safeguard the interest of these old policyholders, and that the new company, as stated, commenced to issue policies direct to new members in August, but that no new policy was ever issued to Sarah C. Morgan, who, as stated, had died in the preceding July.

It is recognized in this State that, unless in contravention of some statutory provision or some principle of public policy, an oral contract of insurance may be a binding obligation, and these facts making in plaintiff's favor, in our opinion, present evidence from which such a contract may be inferred, and if they are accepted by the jury and it is established by the verdict that defendant company organized to take over the membership of the old company, entered into a contract of insurance with this Sarah Morgan under the terms and conditions of a policy already held by her, and her claim is otherwise regularly established, pursuant to the rules of the company, we see no reason why a recovery in favor of the beneficiary should not be sustained.

It may be well to note that, as the facts are now presented, it is not a case coming properly under *Shoaf v. Insurance Co.,* 127 N. C., 308, where a second company was held responsible on policies of the first by reason of having taken over the latter's assets, a liability which was there held to prevail notwithstanding an express stipulation that the second company should not be liable; but it is a question of contract between the parties where the agreement of one may well be held a valid consideration for the agreement of the other and constituting, if made, a binding obligation.

It is urged in defendant's favor that defendant did not issue policies, or commence doing business till August, 1910, and at that time Sarah Morgan was dead, and no contract could therefore be established; but this, to our mind, is not the correct interpretation of the testimony, and is furthermore defective in that it assumes the very question that is in debate between the parties. It is true that the new company did not issue any of its own policies till fall, but the testimony is all to the effect that it began doing business shortly after it was licensed, collecting money, soliciting new business, etc., and the plan was, as stated, to continue the old members under these old policies, but the Insurance Commissioner disapproved and directed that policies issue in all cases. Thus, in the evidence of C. B. Bailey, who testified that he was vice-president and general manager of the old company till May, 1910, and that said company having been forbidden to do business any longer in the State, he had then organized the new company, stated further in his testimony: "It was my plan not to issue any new policy except to new members. We *began business* right away in June, 1910, and, in the meantime we collected money, in May, collected right along in May, 1910." And if, under this plan to hold old members under the terms of the old contract, defendant company received dues from or for S. C. Morgan and same were paid and received as a member of the new company, it would, as stated, be evidence from which a contract might be inferred.

Again it is urged that the plan devised for continuing the old mem-

bers under the old policies having been disapproved by the commissioner, the scheme was thereby rendered unlawful and no recovery should be allowed, but the authorities are to the effect that, when a statute or valid regulation in restraint only of the company's action is made for protection of the policyholder, a recovery may ordinarily be had, though the contract is in breach of the regulation. *Robinson v. Life Insurance Co.*, 163 N. C., 415; *Blount v. Fraternal Assn.*, 163 N. C., 167.

It was further contended that the payment to Lucy Ragsdale should not be allowed significance on the issue of defendant's liability because of the fact that Lucy Ragsdale was also collecting for the old company, and by reason of the testimony of C. B. Bailey that he remitted amounts collected for old company to their office at Washington.

There is no testimony from Lucy Ragsdale that she continued to act for the old company. Her report made and her collections sent were to the new company, defendant, and there is evidence tending to show that it was entered on the books of this company at Charlotte, N. C., and the testimony of the witness Bailey is far from positive or satisfactory that the money paid on the policy of S. C. Morgan was remitted to the old company. It seems there was some uncertainty as to the name on the defendant's books, whether Morgan or Morgar, and the number of the policy on the book appeared to be 28343 instead of 58343; but the name and the amount paid and the date as it appeared in the books corresponded with other evidence of plaintiff as to this payment, and the witness Bailey, speaking to this question and the name as it appeared in the books, said: "Things were so confused at that time, getting members and all, that I don't know just how that was. If they didn't have a policy it was transferred to the Royal Benefit Society. If money is sent to me through mistake which is meant for them, I send it to them. The commissioner had forbidden the Royal Benefit Society to do business in North Carolina and, if Sarah *Morgan* or Sarah *Morgar* is on there, *it is my business.* It was my plan not to issue new policies except for new members."

True, the witness goes on and gives reasons or facts tending to show that the name appearing on the books was not that of Sarah Morgan, but when a witness makes statements having differing tendencies it is for the jury to say which of such statements shall prevail. *Dail v. Taylor*, 151 N. C., 284 and 289.

There are several adverse rulings of the court on the reception of evidence and, although they may not be presented on another trial, we consider it well to deal at least with some of them.

There is nothing to materially change the significance of the record as to the letters of Lucy Ragsdale, making certain admissions tending to charge defendant company, and, under the decision on the former appeal and as the evidence now stands, the letter was properly excluded.

And the ruling of the court excluding the testimony of the Insurance Commissioner as to "his *understanding*" of the statements of Bailey and the organizers as to the purposes and plans of the new company and as to what was the "meaning" of their "statements to him on the subject" can perhaps be upheld because in the precise form in which it is presented it professes to give the *inferences* that the commissioner made from their statements and not what these parties said.

There is authority to the effect that testimony in this form may, at times, be properly interpreted as the statement of ·a fact (*Gilliland v. Board of Education,* 141 N. C., 482), but the matter is not of importance, as the witness had already stated the relevant facts in unobjectionable form, and the witness C. B. Bailey had testified in substance to like effect.

Objection was made to the decision excluding the following statement in the deposition of Leonard Morgan, the plaintiff: "When the Royal Benefit Society left North Carolina its contracts, including my mother's policy, were assumed by the Royal Fraternal Association without issuing new policies or reëxamination of the old policyholders in the Royal Benefit Society. My mother kept up the Royal Benefit Society policy with the new company, the Royal Fraternal Association." The objection is made to rest on the position that this answer purports to give an opinion of the witness or his deduction from certain facts and not the facts themselves. While this answer may be construed as a deduction of the witness, and so objectionable under the authorities cited, it also permits the interpretation that it is a statement of facts relevant to the issue: that the company assumed the payment of the policies and that his mother kept up the premium. *Renn v. R. R., post,* 128. This deposition, it seems, was taken after due notice, in which cross-interrogatories were filed by defendant and no objection appears in the deposition. It was open and on file for some time before the trial, and objection was first made on the trial as the deposition was being read in evidence. Under our decisions, and unless by consent of parties, it seems that the objection should not now be allowed. *Ivey v. Cotton Mills,* 143 N. C., 189 and 197; *Bank v. Burgwin,* 116 N. C., 122 and 124.

The court also excluded the opinion of the Insurance Commissioner as to the handwriting of M. B. Garber, national secretary of the former company, and purporting to be subscribed to the circular-letters sent to his office and generally throughout the State. The preliminary statement of the witness on this question appears in the record as follows: "I am familiar with the signature of M. B. Garber only through letters that have come into this department signed by him. I have been having correspondence with him and seeing his signature ever since he has been connected with this society. Basing my knowledge on my familiarity with his signature, I say that the signatures to the exhibits signed M. B. Garber are his signatures."

6—170

In order to give an opinion as to the genuineness of handwriting it is not necessary, under our decisions, for the witness to have acquired his knowledge from seeing the person write. It may be acquired by examination and perusal of letters and documents known to be in his handwriting. *Nicholson v. Lumber Co.*, 156 N. C., 59; *Tuttle v. Raney*, 98 N. C., 513. On this subject, in *Nicholson's case*, it was held as follows: "A witness, whether an expert or another who has acquired knowledge and formed an opinion as to the character of a person's handwriting from having seen such person write, or from having in the ordinary course of business seen writing purporting to be his and which he has acknowledged or upon which he has acted or been charged, may give such opinion in evidence when a relevant circumstance"; and, in *Raney's case, supra:* "While it is not competent to prove handwriting by comparison, it is not necessary that the witness shall have seen the person whose writing is the subject of controversy, write. It is sufficient if he shall have acquired by other means, as by receiving letters or handling papers of admitted genuineness, knowledge to enable him to identify the writing. From these and other like cases, it appears that the Insurance Commissioner was a competent witness and that his testimony should have been received.

There is error. The judgment of nonsuit will be set aside and the cause referred to the jury under appropriate issues.

Reversed.

WALKER, J., dissenting: Finding myself unable to agree with my brethren in this case, I think it proper to fully state the reason why I differ with them. I admit that this is not the same case as was here at the last term, as some new evidence has been added, and the same question is not presented as to the competency of Miss Lucy Ragsdale's letter, which we commented upon before and for the admission of which the new trial was ordered. But I do not think what is supposed to be new evidence in the sense that it tends to establish the liability of the defendant to answer for the debts or obligations of the other society, which has been banished from the State, growing out of its insurance contracts—should have the least significance in the case, as it does not tend to prove any material facts upon which such liability can be based. What was said or done by the agent at Charlotte was not competent to fix the defendant with such liability, for it does not appear that he had any authority from it to act in the premises, and, besides, it does not tend to prove anything that is material. The *subpœna duces tecum* was issued to C. B. Bailey, who represented the Royal Benefit Society—whose license to do business in the State had been revoked, and which had insured Sarah C. Morgan—and who also represented the defendant.. The book

he produced contained the entry "Sarah Morgan, policy No. 28343," whereas, her policy number in the Royal Benefit Society was 58343. Sarah C. Morgan died a month before the defendant, the Royal Fraternal Association, began to insure. The latter society was conducted on the lodge plan and was authorized to do business only in that way. This required an application to be made for membership, and a medical examination before entrance, and if satisfactory and the application was approved, a policy of insurance then issued.

Sarah C. Morgan never had a policy in this defendant company, nor was she a member of the order. It was impossible for her to have been such, as she was dead when it received its first application for membership. It would interfere very seriously with the proper and lawful exercise of its franchise if the defendant should be permitted to do business in the way suggested by the plaintiff. The essence and entire scope of its plan and its contemplated methods of business are opposed to any such conduct on its part. There is absolutely nothing to charge it with liability save the loose and unauthorized statements of third parties, which fall within the category of the rankest hearsay. It appears that it did no insurance business until 1 August, 1910, when its first policy was written. The brief of plaintiff admits that it was forbidden by the State Insurance Commissioner, Mr. James R. Young, to conduct business in any other way than by issuing new policies: so, therefore, it appears from this fact that it would have been contrary to law for it to guarantee the payment of policies issued by other companies, and surely it would be a violation of its chartered privileges. There is nothing whatever in this case to create an estoppel. The defendant received none of the assets of the other society as a trust fund to pay its liabilities, and Mrs. Morgan did not change her position to her detriment by reason of anything done by the defendant, which would be necessary to raise any kind of estoppel. 29 Cyc., 49. The charter of the defendant entered into and formed a part of any contract of insurance made by it (29 Cyc., 69), even if there had been any dealings between Mrs. Morgan and defendant, and she was bound to take notice of its powers and privileges and the limit of its authority to contract. But defendant had no dealings with her, and the whole contention of the plaintiff can rest only upon the fact that the agent of the Royal Benefit Society happened also to be the agent of the defendant, but this is fully explained (if it could possibly have any such legal effect as to form a contract), by the statement that he was collecting for the former company in the winding up of its business preparatory to its withdrawal from the State, under the order of the commissioner, and did not collect anything for defendant except on its own business, which consisted entirely of new insurance. The court took this view of the matter and ordered a nonsuit, which I

think was a correct ruling, as the evidence is as far from making out a case against defendant as it could possibly be.

Surely the defendant cannot be bound, in law, by the acts, conduct or declaration of a third party having not the semblance of authority to act in its behalf. The acts and statements of a person, even one professing to be an agent, are not competent to establish his agency for another. This must be done independently before his acts can bind the alleged principal, and there is nothing more in this case than such acts or declarations, if there is any evidence to show even such a state of facts. It would be dangerous in the extreme to permit such evidence to go to a jury as tending to establish an agency, *or an* authority to bind another, and especially a defendant, like this one, which has only special and limited powers under its charter of a very peculiar nature. The devotion of its funds to a purpose not contemplated by its charter would seriously interfere with the orderly and regular transaction of its legitimate business. Besides, a promise or undertaking to pay or guarantee the debt of another must be in writing unless where the party to be charged has received funds to pay the same and, therefore, holds as a trustee, or is bound because of a promise implied from the fact of having received the fund. The judgment, in my opinion, should be affirmed.

JUSTICE BROWN concurs in this dissenting opinion.