UNIVERSAL OIL AND FERTILIZER COMPANY v. R. A. BURNEY.

(Filed 24 October, 1917.)

1. **Evidence—Letters—Handwriting.**

When the contents of letters written by a party to an action are relevant to the inquiry, it is not required that the witness should have seen the person write before he is permitted to identify the letter by the handwriting, for it is sufficient if he can do so from correspondence formerly had between them.

2. **Evidence—Lost Letters—Handwriting—Identification—Correspondence.**

Where the purchaser of goods sues his vendor for damages in his failing to deliver them in accordance with his contract, and the quantity of the purchase is in dispute, and a letter previously written by the vendor to the purchaser is relevant to the inquiry, it is not required that the purchaser notify the vendor to produce a copy of this letter in order to introduce parol evidence of its contents, it appearing that the purchaser had made proper and sufficient search for the original and there is no evidence that a copy had been made.

3. **Vendor and Purchaser—Measure of Damages—Evidence—Damages Minimized.**

Where the vendor sold a large quantity of cotton seed, being informed by the purchaser that orders for a manufactured product therefrom would be taken against this specific purchase, and the purchaser breaches this contract and is sued for the difference in the price agreed and that required to get the cotton seed elsewhere, and there is evidence that this was done on the open market at the then prevailing prices: *Held,* while the purchaser is required to exercise reasonable business prudence to

minimize his loss, evidence as to a price offered another. by the vendor, less than the contract price, without indication to exact time or price or quantity, is too indefinite, and, on appeal, it being incumbent on defendant to show prejudicial error, an exception to the ruling out of the evidence will not be sustained.

4. **Evidence — Contracts — Local Customs — Burden of Proof—Vendor and Purchaser.**

While a contract may be explained and interpreted by reference to a general custom or usage, so all-prevailing. that the parties may be presumed to have contracted with reference to it, the doctrine can have no application to a purely local custom among the merchants of a town to receive goods from the carrier at the boat landing in an unusual manner, in modification of a contract, and the burden is on the party setting up the custom to show that his adversary party knew of this custom and contracted with regard to it.

CIVIL ACTION, tried before *Bond, J.,* and a jury, at April Term, 1917, of NEW HANOVER.

The action was chiefly to recover damages for an alleged breach of contract on the part of defendant in the sale and delivery of a certain amount of cotton seed, plaintiff's evidence tending to show that in February, 1912, plaintiff bought and defendant sold and agreed to deliver at the boat at White Oak Landing 8,000 to 10,000 bushels of cotton seed for purposes of manufacturing and resale, at the contract price of 24 cents per bushel, or $16 per ton; that after delivering about 2,300 bushels, defendant, in breach of its contract, failed to deliver the remainder, and plaintiff was thereby forced to go on the market for the remainder of the seed, or 5,650 bushels of them, at an advanced price, being the amount required to fill its contracts, made in reliance on defendant's agreement, and to plaintiff's damage $360.75.

The evidence of plaintiff tended further to show that the contract for said purchase was in parol and made by its purchasing agent, A. A. McQueen, and that at the time the sale was made said agent notified defendant that the seed were being bought for manufacturing, and that disposition of the product would be made in reliance upon defendant's agreement, McQueen testifying, among other things, as follows: "I insisted on Mr. Burney's not putting in any more seed than he actually had, as Mr. Worth (manager) would sell the product. of these seed against the seed he was buying—he would sell oil against these seed. Mr. Burney said he had 8,000 bushels of seed of his own, and insisted on wiring for sacks, so that they could be shipped immediately; they were to be shipped as soon as the sacks could come, plaintiff having agreed to supply the sacks." And again, "I told Mr. Burney that Mr. Worth had sold the cake against this lot of seed and was anxious to get it." Additional claim was made, with evidence to support it, for a quantity of

sacks supplied by plaintiffs, pursuant to agreement, and which defendant had never returned or accounted for.

Defendant averred and offered evidence tending to show that he only contracted for 6,000 bushels of seed, and that he had delivered as much as 3,316 bushels, and that his reason for not making further deliveries was because of plaintiff's failing to supply sacks that were suitable for shipment; that they were not delivered on the boat, but were left on the river bank, in care of boys who were kept there by local merchants of White Oak to overlook and care for freight of that kind at the landing, this being a custom which prevailed there with the merchants and shippers.

Defendant contended further that he had not been paid for all the seed he had shipped, and that as a fact there would be due defendant on correct settlement $36.30, which he demanded as a counterclaim.

On issues submitted, the jury rendered the following verdict:

"Is defendant, Burney, indebted to plaintiff, and if so, in what amount?" Answer: "Yes, $393.32, with interest from 15 March, 1917."

Judgment on the verdict, and defendant excepted and appealed.

*W. P. Mangum Turner for plaintiffs.*
*McClammy & Burgwin for defendants.*

HOKE, J. The jury have accepted plaintiff's version, that there was a breach of contract on the part of defendant, assessing plaintiff's damages at $393.32, and on careful consideration of the record we find no error that would justify us in disturbing the results of the trial.

It was objected for defendant that the witness, Worth, examined for plaintiff in reference to a letter purporting to have been written by defendant, Burney, was allowed to testify to the handwriting of defendant, having never seen him write, but having received letters from him in the course of business. It is well recognized that, in order to speak to this question, a witness is not required to have seen the person write, and on the facts in evidence, authority with us is against defendant's position. *Morgan v. Fraternal Association,* 170 N. C., 75-82, citing *Nicholson v. Lumber Co.,* 156 N. C., 59; *Tuttle v. Rany,* 98 N. C., 513. *Morgan's case* was not unlike this, and the opportunity of the witness to familiarize himself with the handwriting was not greater, and it was held, on this subject: "Where the Insurance Commissioner has testified that he is familiar with the signature to a letter sought to be introduced in evidence from correspondence with the writer through his department, and he could testify to the handwriting," etc.

It was objected further that this witness, Worth, who was general manager of plaintiff company, was allowed to speak to the contents of

the letter in question, the witness having said that he had looked for the letter and had not been able to find it; that his letter-book contained an entry showing that such a letter had been received, but that he was unable to find it; that he could not find any of the company's correspondence for January, February, or March, April, or May, 1912; that they had moved three or four times in the last five years, and he couldn't find the correspondence anywhere.

The contract here was made by the purchasing agent, McQueen, and was in parol. The letter in question from defendant, Burney, previous to the contract, contained an offer to sell plaintiff 8,000 to 10,000 bushels of cotton seed, and so was in direct support of plaintiff's claim that such was the contract. Defendant, as we understand the record, does not contend that the proof of loss of the original is insufficient, but bases his objection on the fact that no notice was shown for defendant to produce a copy, and unless that was done, parol evidence of the contents of the lost original is not permissible.

In the application of what is termed the best evidence rule, there is decided conflict of authority on the question whether there are degrees of secondary evidence. An intelligent writer on the subject (Jones on Evidence (2d Ed.), sec. 228) lays it down as the English rule that no such degrees are recognized, and that the position is supported by the cases in Massachusetts, Indiana, Michigan, and Nebraska. The author also states that the current of American authority is to the contrary, and, under this, termed the American rule, that parol evidence of a lost original will not be received when there is shown to be a dependable copy in existence and available as evidence, or until proper effort is made to procure it. In case of private writings, a decision in this State (*Osborne v. Ballew,* 29 N. C., 415) seems to favor the English rule, but it is not now necessary to decide the question, for under either rule it is held that before the principle is recognized or enforced, it must be shown that there is a copy in existence, to be procured by proper procedure. Jones on Evidence, sec. 229. Defendants object and except because they were not notified to produce a copy, and we find nowhere in the record that such a copy was made or held by defendant.

Again, it appeared that a witness for defendant, J. R. Hunt, had testified that he lived at White Oak in 1912 and in the spring of that year, and McQueen, plaintiff's purchasing agent, had made him an offer for cotton seed at some price below 24 cents per bushel, which was declined; and it is insisted that error was committed in excluding a question and answer of this witness to the effect that if plaintiff had offered as much as 24 cents witness would have sold.

It is well understood that in case either of tort committed or contract broken, it is "the duty of the injured party to do what reasonable busi-

ness prudence requires in order to minimize his loss." *Cotton Oil Co. v. Telegraph Co.,* 171 N. C., 705-708, and authorities cited. But the proposed question and answer of the witness here is entirely too indefinite to call for or permit the application of any such principle. It does not appear what was the price offered, nor whether the time when it occurred would have tended to relieve plaintiff, nor the amount of seed that the witness had.

It is incumbent upon a party who assails the validity of a trial to show that prejudicial error has been committed, and on the facts presented this exception must be disallowed. *In re Smith's Will,* 163 N. C., 466. And the same position will suffice for a principal objection to the charge of the court that, after instructing the jury, they could allow as damages the difference between the contract and market price; "that if defendant knew that plaintiff had made bargains by which they were to use this seed, and plaintiff was forced to go into the market and buy the seed at a higher price to take the place of the seed which, if any, he had wrongfully failed to furnish, the added cost of the seed would be an additional element of damages." There is evidence on the part of plaintiff to the effect that at the time of the contract defendant knew plaintiff was buying these seed to manufacture, and that he had sold his product of the mills "against the seed plaintiff was then buying of defendant"; and on this evidence we incline to the opinion that the charge of his Honor can be fully sustained as given. *Tillinghast v. Cotton Mills,* 143 N. C., 268; *Machine Co. v. Tobacco Co.,* 141 N. C., 284; *Lewis v. Rountree,* 79 N. C., 122.

In *Machine Co. case, supra,* it was held that when one violates his contract he is liable for such damages, including gains prevented, as well as losses sustained, as may fairly be suffered to have entered into the contemplation of the parties when they made the contract.

But in any event there is nothing in the record to show that in buying these seed to protect itself against the consequences of defendant's breach the plaintiff paid anything above the market value, or that he purchased at the time otherwise than at the market price. On this question the language of the witness, Worth, is that he sold 110 tons of cake to the Exchange Cotton and Oil Company, of Kansas City, and failing to get the seed from Mr. Burney, he had to buy them, because these parties required his company to line up to their contract and deliver the cake. "So I went on the open market and bought seed at the best price I could. I bought from the North Carolina Cotton Oil Company and paid the prices as follows." There is nothing to show that plaintiff bought, except when compelled to do so by the obligation into which his company had entered, nor, as stated, that he paid more than the market price at the time the purchase was made; and no preju-

dicial error being made to appear, this exception also must be overruled. Defendant also objects and assigns for error that the court, in charging the jury as to the existence of the usage or custom in delivering goods on the river bank, in care of boys there employed to look after them by local merchants, instead of delivering them f. o. b. on the boat, as the contract in terms specified, instructed them, among other things, that if the oil company knew nothing about such a custom it was the duty of defendant to deliver to the steamboat company and not have them in custody of the employees of these merchants.

It is established doctrine that the terms of a contract may be explained and interpreted by reference to a prevailing custom or usage, and it is recognized further that such a custom may be so general and all-pervading that the parties may be presumed, in some instances conclusively presumed, to have made their contract in contemplation of it, but such a presumption is not permissible in respect to a custom of this kind, the usage at a local steamboat landing. In such cases, unless the parties knew of it, they could not have contracted in reference to it; and on the facts in evidence the charge of his Honor is undoubtedly correct. *Gilmer v. Young,* 122 N. C., 806; *Chateaugay Ore Co. v. Blake,* 144 U. S., 476; *Pennel v. Transportation Co.,* 94 Mich., 247; Clark on Contracts, 328; Jones on Evidence (2d Ed.), sec. 464.

In the citation to Clark, *supra,* it is said: "It is a general rule that the usage must have been known to the parties, but if a usage is established and general, it is presumed to have been known to them, and is obligatory without poof of knowledge; and even in case of ignorance, if it is not a general usage, or if from want of informants or any other reason it cannot be held to be established in the sense in which we have used that term, then it must be affirmatively shown that the parties had knowledge of the usage at the time of contracting, and contracted with reference to it."

And in Jones on Evidence: "There are certain commercial customs and usages of which every person in the community is deemed to be cognizant—such, for example, as those belonging to the law merchant; but the usages of special trades and those local usages which may be limited to certain communities cannot, of course, be presumed to be known at all. These have been called usages as distinguished from the generally recognized customs of times. In respect to these usages, there should be proof either of actual knowledge on the part of the person to be affected, or proof of circumstances from which such knowledge may be fairly inferred."

The remaining exceptions are without merit, some of them being abandoned by appellant; and on the record the judgment for plaintiff is affirmed.

No error.