STATE v. J. D. WINCKLER AND D. M. WINCKLER.

(Filed 14 October, 1936.)

**Criminal Law I c—Questions asked by court of defendants' witnesses which tended to disparage them held violation of C. S., 564.**

Defendants relied on an alibi to establish their innocence, and introduced a witness who testified that he was playing poker with defendants some distance from the scene of the crime at the time it was committed, and introduced another witness who testified that the character of the witness testifying as to the alibi was good. The court asked the first witness whether his employer knew he played poker all night on Sunday nights, and asked the character witness whether he would say a man's

character was good who played poker all night Sunday night. *Held:* The questions propounded by the court had the effect of impeaching the witnesses and were in violation of C. S., 564, and defendants' exceptive assignments of error thereto must be sustained.

APPEAL by the defendants from *Cranmer, J.,* at May Term, 1936, of WARREN.  New trial.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*John Kerr, John Kerr, Jr., and John Y. Hutcheson for defendants, appellants.*

SCHENCK, J.  The defendants were tried and convicted upon two bills of indictment charging them with having feloniously broken and entered a storehouse wherein merchandise and money were kept with intent to steal and carry away said merchandise and money, and with feloniously stealing and carrying away from the possession of one Clyde Jeffcoat money to the amount of $100.00, with the use or threatened use of firearms whereby the life of said Jeffcoat was endangered.

The State offered evidence tending to show that about 4:30 in the morning of Monday, 6 April, 1936, the defendants came to the Swan Sandwich Shop, near Norlina, and waked up Clyde Jeffcoat, who was in charge of said shop and sleeping therein, stating that they wanted to buy some gas; that when Jeffcoat came to the door one of the defendants broke the glass in the door and covered Jeffcoat with a pistol, and both defendants entered the shop and took merchandise and money therefrom; that the defendants tied Jeffcoat to his bed and made their escape in an automobile, taking the stolen merchandise and money with them.

The defendants testified and offered other evidence tending to show that from 11:30 o'clock Sunday night, 5 April, 1936, till 7:00 o'clock Monday morning, 6 April, 1936, they were at Newton's filling station, just outside the corporate limits of Boydton, in the State of Virginia; that they were continuously engaged in a poker game during this time and were not therefore at the Swan Sandwich Shop in North Carolina at the time the State's witness testified the shop was entered and he was robbed.

To sustain their alibi, the defendants introduced as a witness one Robert Beville, who testified that he played in the poker game at Newton's filling station with the defendants from about 11:30 o'clock p.m. (5 April) till about 6:00 o'clock a.m. (6 April), and that the defendants were at the filling station during all of this time.  In the course of the redirect examination of this witness, the court interposed the

following questions, to which the witness made the following answers:
"Q. Who did you say you worked for? A. H. T. Allgood. Q. What
kind of business do they do? A. Grocery and general merchandise.
Q. Do they know you are playing poker every Sunday night? A. No.
Q. Why did you not tell them? (No answer.)" The defendants in apt
time objected to these interrogatories by the court and make them the
basis for an assignment of error.

The defendants, to further sustain their alibi, offered as a witness one
Nat Hutcheson, who testified that he knew the witness, Robert Beville,
and that his character was good. During the course of the cross-
examination of this witness the court interposed the following question:
"Would you say a man that played poker all night Sunday night, in
violation of law, was of good character?" To which the witness an-
swered: "I think for truth and veracity he would be." The defendants
in apt time objected to the interrogatory and make it the basis of an
assignment of error.

Both of the assignments of error must be sustained, as the questions
propounded by the court clearly had the effect of impeaching the wit-
nesses, and were in violation of C. S., 564.

*Mr. Justice Walker,* in a learned and exhaustive opinion in a case
wherein the trial judge propounded questions to a witness, who was a
lawyer, tending to impeach him by showing unethical practices, writes:
"What a judge says in condemnation of a witness is generally fatal to
the party in whose behalf he testifies. The witness stands before the
jury not only impeached, but thoroughly discredited. What the judge
says in disparagement of him counts for far more than witnesses or
counsel may utter against him. It would be dangerous to hold other-
wise. There are other cases than *S. v. Dick, supra* (60 N. C., 440), and
*S. v. Cook, supra* (162 N. C., 586), in which this Court has held that
the impeachment of a witness, emanating from the judge, becomes so
deep-seated in the minds of the jury as to be beyond the reach of the
judge, however much he may endeavor to counteract its evil influence,
and it will, at least, leave the party once prejudiced by it so completely
handicapped as to prevent that fair and impartial trial which the law
guarantees to him and to which he is justly entitled. One word of
untimely rebuke of his witness may so cripple a party and blast his
prospects in the case as to leave him utterly helpless before the jury.
. . . For the judge even to intimate that the conduct of the witness,
an attorney, was unprofessional and unethical was undoubtedly calcu-
lated to prejudice the defendant, whatever in the way of explanation or
atonement of it he may have said afterwards, and however praiseworthy
the motive or intention of the judge may have been. The enforcement
of a moral principle, when time and occasion call for it, is highly com-

mendable, but the statute does not permit it to be done from the bench when the rights of one of the parties may be seriously impaired, if not destroyed, by it." *Morris v. Kramer,* 182 N. C., 87 (91).

For the errors assigned there must be a
New trial.