## STATE v. OLLIE BEAN.

(Filed 16 December, 1936.)

**Criminal Law § 50—Interrogatories by court addressed to defendant testifying in his own behalf held for error as expression of opinion on evidence.**

Defendant, charged with homicide, testified as to his version of the fatal killing upon his contention of self-defense, and narrated the actions of himself, his oldest son, and the deceased. Upon the conclusion of his testimony the court, by interrogation objected to by defendant's counsel, brought out the fact that the son was seventeen years old, and was present in the courtroom. In his charge the court set forth the contention of the State that defendant's testimony could not be relied upon because uncorroborated, notwithstanding the fact that defendant's oldest son, who saw what happened, was present in the courtroom. *Held:* Although the prosecuting attorney might impeach defendant's testimony by developing the fact that defendant's son was not called as a witness to corroborate defendant's testimony, the interrogatories by the court to the same effect, emphasized by the statement of the State's contentions, constitute reversible error, the statute, C. S., 564, inhibiting an expression or showing of opinion by the court as to whether a fact is fully or sufficiently proven by interrogation as well as by statement or action.

APPEAL by defendant from *Phillips, J.,* at May Term, 1936, of MOORE. New trial.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*J. H. Scott and W. R. Clegg for defendant, appellant.*

SCHENCK, J. This is an appeal from a judgment of imprisonment upon a conviction of manslaughter.

The State's evidence tended to show that the defendant shot and killed the deceased near the home of the defendant, and that the defendant told the witness, Mrs. Adeline McNeill, that "Andrew (the deceased) didn't see me and there wasn't a word spoke—said Edward (son of the defendant) had been out to the chicken house and told him (defendant) that he (deceased) was coming with a gun and he (defendant) went in the kitchen and cracked the door open, and when he (deceased) got even with the well he downed him (deceased), and he fell like a beef shot, and there wasn't a word spoken and Andrew (the deceased) didn't see him (defendant) when he shot."

The defendant admitted that he fired the fatal shot, and relied principally upon his own testimony to establish his plea of self-defense. The defendant testified that about 3:30 o'clock in the afternoon of 31 Decem-

ber, 1935, Andrew Comer, the deceased, came to his home and cursed and abused the defendant, and that about 7:00 o'clock of the same day his oldest boy had been out to the chicken coop and he (defendant) went into the cook room and "saw Mr. Comer coming before he got to the wagon shelter and he stopped there and viewed the house I guess for a couple of minutes. I was in the door with no light in the room; the light was in the other part of the house and so he come up the path where we had drug the snow off, right by the steps, and placed himself under the well shelter, or the shadow of it. . . . It was a very bright moon-shining night and I could see Mr. Comer as he approached the house, and he was carrying that gun there. Comer hailed me, 'Hey, come out!' I recognized his voice; it was Andrew Comer's voice. When I spoke, I says, 'Hey!' And when I spoke he riz with his gun stooped over like this. He was standing behind the well, and I saw his gun, and I shot him. I shot him when he was raising the gun and pointing it right towards me. He could see me from where he was and I could see him from where I was.

"After I shot he fell and I stood there for about two minutes, then I went out to where he was and he was breathing; wasn't any further down than his throat. I went back in the house and sent my boys after a doctor and the law."

The following appears in the record:

"By the court: How old is your oldest boy?

"A. Seventeen years old in September.

"Q. Is he here?

"A. Yes, sir.

"To the foregoing questions and answers the defendant objects; objection overruled; defendant excepted."

His Honor charged the jury that "The State insists and contends, gentlemen of the jury, that there were people there who knew about the facts; that there was a 17-year-old boy who the defendant himself says knew all about the circumstances; that he was the one who notified the defendant that the deceased was coming; that he was the one who notified him that the deceased had a shotgun; that he was the one who notified him of the deceased's approach, and that he was here in the courtroom in your presence and was not called by the defendant to testify as to these material facts when the burden of proof was upon him."

The exception must be sustained, as the questions propounded by the court to the defendant clearly had the effect of impeaching his testimony as a witness in his own behalf, and were, therefore, in violation of C. S., 564. *S. v. Winckler,* 210 N. C., 556, and cases there cited. That these questions had this effect is emphasized by the fact that the court in the charge set forth as a contention of the State that the testimony of the

defendant could not be relied upon because it was uncorroborated, not-
withstanding the fact that the oldest boy of the defendant, who saw what
happened, was present in the courtroom, and was not called to testify.

The failure of the defendant to avail himself of the opportunity to
place his son upon the stand in corroboration of his own testimony was
a fact proper for the prosecuting attorney to develop, since partisan
counsel are permitted to impeach the testimony of any adverse witness,
but this right to impeach a witness does not extend to the trial judge,
who is inhibited by the statute from giving "an opinion whether a fact
is fully or sufficiently proven," and this inhibition is against expressing
or showing such an opinion by interrogation, as well as by statement
or action.

For the error assigned, the defendant is entitled to a

New trial.