IN RE WILL OF MINNIE I. S. BARTLETT.

(Filed 30 April, 1952.)

1. Wills § 24—

Issues of fact raised by a caveat must be tried by a jury. G.S. 31-33.

2. Trial § 18—

It is the duty of the court alone to decide legal questions presented at the trial and to instruct the jury as to the law arising on the evidence in the case; and it is the function of the jury alone to determine the facts of the case from the evidence, it being prohibited that the court should give an opinion in any manner as to whether a fact is fully or sufficiently proven. G.S. 1-180.

3. Trial § 6—

The trial judge is forbidden to convey to the petit jury in any manner at any stage of the trial his opinion on the facts in evidence. G.S. 1-180.

4. Same—

Propounders sought to prove the genuineness of the handwriting of the script by testimony of a witness who had received Christmas cards each year from deceased but who had never seen deceased write. *Held:* Interrogation of the witness by the judge which amounted to an expression of opinion by the court to the effect that the testimony of the witness proved the cards to be in the handwriting of decedent is error and was prejudicial under the facts of this case.

5. Same—

While the trial court has the power to interrogate a witness for the purpose of clarifying matters material to the issues, he must exercise such power with caution so as not to reveal to the jury his opinion on the facts in evidence.

APPEAL by caveators from *Bennett, Special Judge,* and a jury, at August Term, 1951, of WAYNE.

Caveat to script propounded for probate as holographic will.

These are the essential facts:

1. On 25 February, 1920, Minnie I. S. Bartlett, whose maiden name was Minnie I. Sasser, married W. H. Bartlett, the widowed father of four small daughters, who then ranged downward in ages from eleven to four

years. These daughters are now known as Ruby B. Waters, Clara Bartlett, Welda B. Best, and Virginia B. Sasser.

2. W. H. Bartlett and his second wife, Minnie I. S. Bartlett, lived together in the marital state upon the latter's farm in Wayne County from the day of their marriage until 2 January, 1949, when the latter died without issue. Minnie I. S. Bartlett acted as foster-mother to her four stepdaughters throughout her married life.

3. On 18 January, 1949, W. H. Bartlett and his four daughters, as propounders, presented the script in controversy to the Clerk of the Superior Court of Wayne County, asserted that it was executed by Minnie I. S. Bartlett as her holographic will, and asked that it be legally established as such. The clerk thereupon admitted the paper to probate in common form as the last will of Minnie I. S. Bartlett. The document is couched in this language:

This is my will at my death to my husband W. H. Bartlett all my property all his life. At his death want all property valued and divided in four equal shares. One to Ruby B. Waters one to Clara Bartlett one to Welda B. Best and one to Virginia B. Sasser. And to Clara Bartlett my dimond ring. At my husband death I want my neice Sadie Collins to have 2 chair one table mirrow in hall. and all my family pictures. All so land enough for building lot on high way where she desires.

May 1946                                      MINNIE I. S. BARTLETT.

4. On 24 October, 1950, Sadie Collins and N. C. Howell appeared before the Clerk of the Superior Court of Wayne County and entered a caveat to the probate of the script, alleging "that the paper writing . . . is not the last will and testament of Minnie I. S. Bartlett for that it was not executed . . . as required by law." The Clerk forthwith transferred the caveat proceeding to the trial docket of the Superior Court for trial by jury at term upon the issue of *devisavit vel non*. Bettie Holder Delay, Junia Holder Gunter, Daniel T. Holder, Henry S. Holder, John F. Holder, Nancy Jane Holder, Walter A. Howell, and Frank Sasser afterwards entered general appearances in the proceeding and aligned themselves with the original caveators. The persons named in this paragraph claim that they would inherit the property of Minnie I. S. Bartlett in case the script is rejected.

5. When the proceeding was tried on its merits, the propounders offered evidence tending to show that the script was written and subscribed in its entirety by the hand of Minnie I. S. Bartlett and was found after her death among her valuable papers and effects. The caveators presented testimony indicating that portions of the paper writing, including the name subscribed thereto, were not in the handwriting of the decedent. The trial judge submitted these issues to the jury: (1) Was the paper

writing purporting to be the last will and testament of Mrs. Minnie I. S. Bartlett found among her valuable papers and effects after her death, as alleged by the propounders? (2) Is said paper writing and every part thereof in the handwriting of the deceased, Mrs. Minnie I. S. Bartlett, and her name subscribed thereto, as alleged by the propounders? The jury answered both of these issues in the affirmative, and the trial judge entered judgment establishing the script as the will of the decedent. The caveators excepted and appealed, assigning errors.

*Dees & Dees and Roy M. Sasser for the propounders, appellees.*
*J. Faison Thomson and John S. Peacock for the caveators, appellants.*

Ervin, J. When a caveat to the probate of a paper writing propounded as the last will and testament of a deceased person is filed with the clerk of the Superior Court having jurisdiction in conformity with the provisions of the statute now codified as G.S. 31-32, and the resultant proceeding is transferred by such clerk to the trial docket of the Superior Court for trial of the issues of fact raised by the caveat at term in conformity to the requirements of the statute now embodied in G.S. 31-33, the issues of fact must be tried by a jury. *Brissie v. Craig,* 232 N.C. 701, 62 S.E. 2d 330; *In re Will of Hine,* 228 N.C. 405, 45 S.E. 2d 526; *In re Will of Roediger,* 209 N.C. 470, 184 S.E. 74; *In re Will of Rowland,* 202 N.C. 373, 162 S.E. 897; *In re Will of Brown,* 194 N.C. 583, 140 S.E. 192; *In re Will of Chisman,* 175 N.C. 420, 95 S.E. 769.

The founders of our legal system intended that the right of trial by jury, whether constitutional or statutory in origin, should be a vital force rather than an empty form in the administration of justice. They realized that this could not be if the petit jury should become a mere unthinking echo of the judge's will. To forestall such eventuality, they clearly demarcated the respective functions of the judge and the jury in both civil and criminal trials in a familiar statute, which was enacted in 1796 and which originally bore this caption: "An act to secure the impartiality of trial by jury, and to direct the conduct of judges in charges to the petit jury." Potter's Revisal, Vol. 1, ch. 452. This statute, which now appears as G.S. 1-180, establishes these fundamental propositions: (1) That it is the duty of the judge alone to decide legal questions presented at the trial, and to instruct the jury as to the law arising on the evidence given in the case; (2) that it is the task of the jury alone to determine the facts of the case from the evidence adduced; and (3) that "no judge, in giving a charge to the petit jury, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury." This statute is designed to make effectual the right of every litigant "to have his cause considered with the 'cold neu-

trality of the impartial judge' and the equally unbiased mind of a properly instructed jury." *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855.

Although the statute refers in terms to the charge, it has always been construed to forbid the judge to convey to the petit jury in any manner at any stage of the trial his opinion on the facts in evidence. *Bailey v. Hayman,* 220 N.C. 402, 17 S.E. 2d 520; *Thompson v. Angel,* 214 N.C. 3, 197 S.E. 618; *S. v. Oakley,* 210 N.C. 206, 186 S.E. 244; *S. v. Bryant,* 189 N.C. 112, 126 S.E. 107; *Bank v. McArthur,* 168 N.C. 48, 84 S.E. 39, Ann. Cas. 1917 B, 1054; *S. v. Cook,* 162 N.C. 586, 77 S.E. 759; *Park v. Exum,* 156 N.C. 228, 72 S.E. 309; *Marcom v. Adams,* 122 N.C. 222, 29 S.E. 333. As a consequence, the judge violates the statute and commits reversible error in so doing if he puts to a witness questions which convey to the jury his opinion as to what has, or has not, been proved by the testimony of such witness. *S. v. Perry,* 231 N.C. 467, 57 S.E. 2d 774; *S. v. Cantrell,* 230 N.C. 46, 51 S.E. 2d 887; *S. v. Bean,* 211 N.C. 59, 188 S.E. 610; *S. v. Winckler,* 210 N.C. 556, 187 S.E. 792; *Morris v. Kramer,* 182 N.C. 87, 108 S.E. 381; 70 C.J., Witnesses, section 721.

The legal battle between the propounders and the caveators in the Superior Court revolved in the main around the crucial question whether the paper writing propounded for probate was wholly written and subscribed by the hand of Minnie I. S. Bartlett, whose will it purports to be. G.S. 31-3. Nobody testified that he saw the script being written. The propounders and the caveators undertook to sustain their respective positions as to the genuineness or falsity of the paper writing by the testimony of numerous witnesses divided into these categories: (1) Expert witnesses, who compared the disputed document with allegedly genuine specimens of the decedent's handwriting (G.S. 8-40, *S. v. Cofer,* 205 N.C. 653, 172 S.E. 176); and (2) nonexpert witnesses, who claimed to be acquainted with the decedent's handwriting either because they had seen her write other papers, or because they had acquired competent knowledge of her handwriting in some other approved manner. *Owens v. Lumber Co.,* 212 N.C. 133, 193 S.E. 219; *Oil Co. v. Burney,* 174 N.C. 382, 93 S.E. 912; *Morgan v. Fraternal Association,* 170 N.C. 75, 86 S.E. 975; *Nicholson v. Lumber Co.,* 156 N.C. 59, 72 S.E. 86, 36 L.R.A. (N.S.) 162; *Tuttle v. Rainey,* 98 N.C. 513, 4 S.E. 475; *McKonkey v. Gaylord,* 46 N.C. 94; *S. v. Candler,* 10 N.C. 393; Wigmore on Evidence (2d Ed.), section 693.

One of the nonexpert witnesses called to the stand by the propounders was Mrs. C. G. Rose, who testified, in substance, that she received by mail each Christmas for some years next preceding the decedent's death a Christmas card purporting to bear the decedent's signature; that she obtained a knowledge of the decedent's handwriting by seeing the Christmas cards thus received by her; and that in her opinion every word of the

paper writing propounded for probate was in the genuine handwriting of the decedent. This witness identified the propounders' Exhibit J as the Christmas card she "got . . . out of the mail box in 1944," and that exhibit was thereupon admitted in evidence.

This testimony and exhibit was received by the trial judge over the objections of the caveators, who drew from Mrs. Rose on cross-examination the admissions that she had never seen the decedent write, and that she merely "thought" the name appearing on each of the Christmas cards was the decedent's signature.

The presiding judge thereupon put the following questions to Mrs. Rose and elicited the following answers from her:

Question: "Over what period of time did you receive Christmas cards from Mrs. Bartlett?"

Answer: "I received cards from her every year after I got acquainted with her until she died."

Question: "You exchanged Christmas cards every year?"

Answer: "Yes, Sir."

Question: "As far as you know she did write them?"

Answer: "Yes, Sir, as far as I know she wrote them."

The caveators noted exceptions to these questions and answers. We are compelled to adjudge such exceptions to be well taken.

A trial judge has undoubted power to interrogate a witness for the purpose of clarifying matters material to the issues. *S. v. Horne,* 171 N.C. 787, 88 S.E. 433; *Eekhout v. Cole,* 135 N.C. 583, 47 S.E. 655. He should exercise such power with caution, however, lest his questions, or his manner of asking them, reveal to the jury his opinion on the facts in evidence and thus throw the weight of his high office to the one side or the other. The questions put to Mrs. Rose by the judge in the instant case were improper. They conveyed to the jury the opinion of the judge that the testimony of the witness proved the Christmas cards to be the genuine products of the hand of the decedent. Their prejudicial effect upon the cause of the caveators was much augmented at later stages of the trial by the repeated use of Exhibit J by witnesses for the propounders as a supposedly genuine specimen or standard of the decedent's handwriting for comparison with the disputed document.

An observation made by a great jurist, the late *Justice Walker,* in *Withers v. Lane, supra,* seems germane: "The learned and able judge who presided at the trial, inspired, no doubt, by a laudable motive and a profound sense of justice, was perhaps too zealous that what he conceived to be the right should prevail, but just here the law, conscious of the frailty of human nature at its best, both on the bench and in the jury-box, intervenes and imposes its restraint upon the judge, enjoining strictly

that he shall not in any manner sway the jury by imparting to them the slightest knowledge of his own opinion of the case."

We omit discussion of the questions raised by the other assignments of error. They are not likely to arise when the cause is tried anew.

For the reasons given, the caveators are granted a

New trial.