## STATE v. RODNEY C. KIMREY.

(Filed 15 October, 1952.)

**1. Criminal Law § 50d—**

The trial court may propound competent questions to a witness in order to clarify what the witness has said or intended to say or to develop some relevant fact overlooked, but in doing so he must exercise extreme care that he does not express an opinion on the facts either by manner or word, and where the interrogation of a witness by the court amounts to cross-examination which impeaches the witness or depreciates his testimony before the jury, it must be held for prejudicial error. G.S. 1-180.

**2. Criminal Law § 78c—**

It is not required that a defendant take exception at the time to interrogation of a witness by the court which amounts to cross-examination impeaching the credibility of the witness.

APPEAL by defendant from *Phillips, J.*, and a jury, February Mixed Term, 1952, of YADKIN.

Criminal prosecution tried upon a bill of indictment charging the defendant with unlawful possession and transportation of nontax-paid liquor.

The evidence of the State discloses that a highway patrolman gave chase to a motor vehicle on a highway in Yadkin County. As the vehicle was stopped, the operator jumped out, fled through a field, and made his get-away. The vehicle was found to contain 132 gallons of nontax-paid liquor. The patrolman at the time did not know the operator of the vehicle, but was able to describe him in such detail that other officers who knew the defendant later picked him up and brought him into the presence of the patrolman, who immediately identified the defendant as being the operator of the liquor-laden vehicle, and the patrolman so testified at the trial.

The defendant, electing to remain off the witness stand, set up the defense of alibi through the testimony of witnesses who testified in effect that the defendant was at another place in another county at the time of

the chase, fixed by the testimony of the patrolman as being between 10:00 and 10:30 o'clock Sunday morning, 21 October, 1951.

Defense witness Glenn Key testified on direct examination that on the Sunday morning in question he drove from his home in Asheboro over to the defendant's home in Siler City and "got him up" around 8:30 o'clock, and that he and the defendant stayed together from then until 1:00 o'clock that day, and that they did not leave Chatham County. This witness, in concluding his direct examination, said he fixed the Sunday in question as being the day of the stock car races in North Wilkesboro.

The presiding judge then conducted an examination of the witness, in part as follows: "Q. Did you go to North Wilkesboro? A. No. Q. How do you know there was a race over there? A. It was scheduled. Q. I am just asking what you know?"

Then, after cross-examination by the solicitor, the presiding judge conducted a further examination of the witness, in part as follows: "Q. When did you hear or learn that the defendant was charged with this offense? A. Well, it was sometime after. Q. Well, I know, but when? A. I don't know the exact date. Q. About how long afterwards? A. Well, I would say approximately two weeks or ten days or something. Q. That was the first time it was called to your attention he was charged with hauling a load of liquor on the 21st day of October, about ten days or two weeks later? A. Yes, sir. Q. When did you next see him after you heard of this charge? A. Off and on all the time. Q. When did you next see him after you heard about it? A. Don't know exactly. Q. About how long afterwards? A. I would say a week, I usually see him maybe once a week or something like that. Q. You live in Asheboro? A. That is right. Q. Where does he live? A. Siler City. Q. That is how many miles? A. 20 Miles. Q. You went down there to sell him this black Ford that you had? A. That is right, or see if he knew anybody that wanted one. Q. Why did you stay from eight in the morning until one in the afternoon? A. Just sitting there talking with him. Q. That is all the business you had with him? A. Yes, Sir."

Defense witness James D. Payne testified he worked at a filling station in Siler City and that the defendant and witness Key went to the station Sunday morning, 21 October, 1951, between 10:00 and 12:00 o'clock and bought soft drinks. During cross-examination by the solicitor, the court interposed this examination: "Q. Your filling station stays open on Sunday morning? A. Open 24 hours a day, seven days a week. Q. Never closes? A. No sir. Q. Know whose black '40 Ford they were riding in? A. Not at the time, no sir."

The jury returned a verdict of guilty as charged on both counts in the bill of indictment. From the judgment pronounced, imposing penal servitude of eight months, the defendant appealed, assigning errors.

*Attorney-General McMullan and Samuel Behrends, Member of Staff, for the State.*

*W. H. McElwee and Donald L. Paschal for defendant, appellant.*

JOHNSON, J.    The defendant assigns as error the way and manner in which the trial judge interrogated his witnesses.    He contends that the judge extended and elaborated on the solicitor's cross-examination of the witnesses in a manner calculated to discredit and impeach them and cast doubt upon their testimony before the jury.

The rule is firmly fixed with us that "no judge at any time during the trial of a cause is permitted to cast doubt upon the testimony of a witness or to impeach his credibility."    *S. v. Simpson,* 233 N.C. 438, 441, 64 S.E. 2d 568; G.S. 1-180, as rewritten, Chapter 107, Session Laws of 1949; *S. v. Cantrell,* 230 N.C. 46, 51 S.E. 2d 887; *S. v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378; *S. v. Woolard,* 227 N.C. 645, 44 S.E. 2d 29; *S. v. Auston,* 223 N.C. 203, 25 S.E. 2d 613.

And under application of this salutary rule, it is well settled that it is improper for a trial judge to ask questions which are reasonably calculated to impeach or discredit a witness.    Cross-examination for the purpose of impeachment is the prerogative of counsel, including the district solicitor in a case like this one, but it is never the privilege of the trial judge.    *S. v. Bean,* 211 N.C. 59, 188 S.E. 610; *S. v. Cantrell, supra; S. v. Perry,* 231 N.C. 467, 57 S.E. 2d 774; *S. v. Winckler,* 210 N.C. 556, 187 S.E. 792.

It is true that frequently in the course of a trial the presiding judge, in order to make for better understanding or clarification of what a witness has said or intended to say, or to develop some relevant fact overlooked, is entirely justified in propounding competent questions to a witness, but in doing so "care should be exercised to prevent by manner or word what may be understood by the jury as the indirect expression of an opinion on the facts."    *S. v. Harvey,* 214 N.C. 9, 11, 197 S.E. 620; *S. v. Perry, supra.*

In the present case, no doubt Judge Phillips in examining the witnesses intended only to clarify the issue by developing relevant facts and circumstances which he felt had been overlooked by counsel.    However, in doing this it appears that the thread of his interrogation developed into cross-examination in manner and form calculated to impeach the witness and depreciate his testimony before the jury.

It may be conceded that not every ill-advised or inadvertent comment or question of a presiding judge tending to impeach a witness is of sufficient harmful effect to constitute prejudicial error.    Nevertheless, a study of the record in the present case leaves the impression that the over-all effect of the court's participation in the examination of the witnesses

offered by the defendant weighed too heavily against him and amounts to prejudicial error entitling him to a new trial, and it is so ordered.

The fact that no exception was noted by the defendant at the time the judge interrogated these witnesses is immaterial under authoritative decisions of this Court. *S. v. Perry, supra; S. v. Bryant,* 189 N.C. 112, 126 S.E. 107.

New trial.