STATE v. DAVIS.

(Filed December 17, 1904).

1. TRIAL—*Judge—Opinion Evidence.*

> An expression by a trial judge that a witness had fully explained for an hour to the jury and to the satisfaction of the court certain facts, is erroneous.

2. TRIAL—*Judge—Opinion Evidence.*

> Where a trial judge presents the argument of the solicitor he should caution the jury not to convict the defendant until his guilt had been shown beyond a reasonable doubt.

INDICTMENT against E. J. Davis and others, heard by *Judge R. B. Peebles* and a jury, at March Term, 1904, of the Superior Court of BLADEN County. From a judgment on a verdict of guilty the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*McLean, McLean & McCormick,* for the defendant.

MONTGOMERY, J. The bill of indictment against the defendants for an assault with a deadly weapon upon D. A. Singletary seems to be, from certain parts of the evidence offered by the State, a very mild charge of the real offense committed against the peace of the State. In the night-time several persons were discovered on or in the road at the prosecutor's premises, and on his opening his door to learn what he could of the matter he was fired at by one or two of these persons and wounded so as to lose the sight of one of his eyes. There was evidence tending to connect the defendants with the crime; but, for errors which occurred in the trial below, and which will be presently pointed out, there must be a new trial. The new trial is granted to the defendant Freeman

because of certain remarks made by his Honor upon the examination of the witness Kerr, and to the other defendants because of error in his instructions to the jury.

It seems that on the morning next after the wounding of Singletary there was found stuck up on Singletary's stables an unsigned writing in these words: "Mr. Singletary—You better put up fence as soon as you can, and if have to come after any more hogs you will find yourself in hell some morning." The evidence had disclosed that Singletary had impounded, under the stock law in force in that section, some hogs of the other defendants than Freeman; that Freeman lived with the Davises, and that Freeman and E. J. Davis, on the day before the night of the shooting, had demanded of Singletary the release of the hogs and had gone off, saying they did not intend to pay damages, and that on the night of Singletary's injury his hog-pen had been torn down and Davis' hogs carried off. The State insisted on the trial below that the paper-writing found posted near the hog-pen was in the handwriting of Freeman, and to prove that fact it offered as a standard of comparison a certain affidavit which he had made before a registrar of election in his county in order that he might be enrolled as a permanent voter under Acts 1901, chap. 555. The contention of the State was that as that affidavit had been found in the office of the Clerk of the Superior Court, witnessed by the registrar of election, it was therefore equivalent to and of the same dignity as an affidavit made in the trial of a civil action, and in law furnished a sufficient standard of comparison. That insistence of the State raises a most important question of evidence, and as the State on the next trial may prove the handwriting of Freeman by other means, it is not necessary to decide it here.

Kerr, an expert witness on handwriting, was being examined as a witness for the State, and after he had been exam-

ined and cross-examined at length was asked by the defendant's counsel to explain to the jury the similarity in the handwriting of these papers.  The witness said: "I will not go over to the jury and point out this similarity unless his Honor instructs me to do so."  It is stated in the record that just then his Honor, declining to allow the witness to further testify as to this matter, said in the presence and hearing of the jury that "the witness had fully explained for at least an hour to the jury and the *satisfaction of the Court* (italics ours) the similarity of the writing in these papers."  No doubt the Judge and the witness were tired out with the protracted cross-examination of the witness, but his Honor ought not to have expressed himself in the presence of the jury as to the effect the evidence of the witness had produced on his mind.  What he said was equivalent to instructing the jury that the witness had proved the similarity of the writings to his satisfaction.  That he had no right to say.

His Honor, in giving the contention of the State, and to which the eighteenth exception was filed, was in error.  Instead of presenting it as he did, it seems to us that he should have cautioned the jury against the spirit of its conclusion.  The language of his Honor was as follows: "The State further insists that the circumstances and facts detailed by the witnesses point to the guilt of the defendants; that the State has shown that a crime was committed under such circumstances that no eye-witness could be had; that it has shown you a motive for the crime; that all the defendants were living on the land of E. J. Davis, whose hogs were shut up, and connected with him by blood or marriage; that the number of persons engaged in the crime was from six to ten—more than enough to include all the defendants; that only one other man lived in the locality where the tracks were traced, and that while it was impossible to get all the guilty ones, there is no danger of getting too many."  As long as he saw

fit to present the argument of the Solicitor, he should have cautioned the jury to have convicted neither one of the defendants until his guilt had been shown beyond a reasonable doubt.

New Trial.