### MANUEL v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 14, 1918.)

No. 4988.

1. JURY ⊜131(8)—EXAMINATION OF JURORS—CAPITAL PUNISHMENT.

Examination of jurors on the point of prejudice against capital punishment, determination of which is, by Cr. Code, § 330,[1] committed to the jury, should be confined to ascertainment of their views and the strength thereof, with the sole object of determining whether they would approach the issue in the proper frame of mind.

2. CRIMINAL LAW ⊜655(4)—EXAMINATION OF JURORS BY COURT—CAPITAL PUNISHMENT.

Statements of court to jurors, excused for prejudice against capital punishment, determination of which is, by Cr. Code, § 330, committed to jury, as to duty to enforce the laws as made, *held* prejudicial, especially where, relative to letters received by all members of the panel, the court had said some one had tried to obstruct the proper administration of justice in the case by seeking to prevent assessment of death penalty.

3. WITNESSES ⊜48(1)—CONVICT AS WITNESS.

A convict is a competent witness in a federal court.

4. CRIMINAL LAW ⊜703—OPENING ARGUMENT—REFERENCE TO FORMER CONVICTION.

Reference by prosecuting attorney in opening argument to the crime, murder, for which defendant was serving sentence at the time of the killing of a prison guard, was unnecessary and prejudicial.

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Ono Manuel was convicted of murder, with sentence of death, and brings error. Reversed.

Redmond S. Brennan, of Kansas City, Mo., for plaintiff in error.

L. S. Harvey, Asst. U. S. Atty., of Kansas City, Kan. (Fred Robertson, U. S. Atty., of Kansas City, Kan., on the brief), for the United States.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

STONE, Circuit Judge. Writ of error from a conviction, with sentence of death.

Eleven so-called assignments of error are here urged, but it is unnecessary to decide all of them. It is charged that during the im-

---

panelment of the jury the court made prejudicial statements concerning the capital penalty, and concerning the receipt by the panel of circulars and form letters concerning capital punishment. Although not known at the time of this trial, it is stated by the district attorney with commendable frankness that these circulars and letters had been sent to the entire panel by the mother of a man to be tried at the same term for another killing. The entire panel, in the instant case, were examined concerning the receipt of these papers, and concerning their views upon capital punishment. In the course of the examination of the first juror the court made a statement to the panel regarding these papers. This statement was within proper bounds. It did, however, emphasize to the panel that some one had endeavored to obstruct the proper administration of justice in that case to the extent of seeking to prevent the assessment of the death penalty. This is important in connection with the further action of the court in remarks regarding the death penalty.

In course of the examination of several jurors it developed that they did not favor the death penalty, and some were excused because they declared that they would not assess it. In connection with this examination the court engaged in the colloquies following:

"Q. Do you believe in the enforcement of the laws of our country? A. Yes, sir; I do, but I don't—My conscience does not take that law as one that should be there, the death penalty.

"Q. You have nothing whatever to do, sir, with the making of the laws; it is the obligation of some one else to make the laws. It is the duty of courts and jurors to enforce the law as made. You say you have conscientious scruples against enforcing the laws as made by the lawmaking power? A. Against inflicting the death penalty, I have.

"Q. Well, answer my question. As I understand, you have conscientious scruples against the enforcement of the laws as made by the lawmaking power; that is, the Congress of our country? A. Yes, sir; as it applies to that.

"The Court: Stand down."

"The Court: You understand, do you, that in this country of ours, that we have different departments of government? A. Yes, sir.

"Q. You understand it is the duty of the lawmaking power to make the law? A. Yes, sir.

"Q. You understand it is the duty of our courts of justice to enforce the laws as made? A. Yes, sir.

"Q. Notwithstanding that fact, notwithstanding the fact that you now are an officer of the court, you tell me that you are not in favor of enforcing the laws as made in cases where you would believe that the law required the infliction of the death penalty? A. No, sir; I couldn't vote for it.

"The Court: Stand down."

"The Court: Q. You understand, of course, that as a juror here in this court you have nothing whatever to do with the making of the laws, do you? A. Yes, sir.

"Q. You understand that our courts of justice are organized by the law for the purpose of enforcing the law? A. Yes, sir.

"Q. Do I understand you to say that as an officer of this court, engaged in the administration of justice, that you are not willing to enforce the laws as made by the lawmaking power? A. Not on capital punishment.

"The Court: You may stand down."

"Q. I am endeavoring to tell you, in this court the jury, and the jury alone, is the exclusive judge of the weight of the evidence, the credibility of the witnesses, and the facts proven in the case; on the other hand, the court, and

the court alone, is the exclusive judge of the law of the case, and it is the duty of a juror to take the law precisely as declared by the court, and to find the facts from the evidence offered here in court, and thus determine whether any one is or is not guilty. Now, if you have any conscientious scruples, sir, against doing that, you are not a fit juror. A. Well, I would have to admit that I have those scruples.

"Q. Have what? A. That I have a conscientious scruple against administering the death penalty; that is, that would be first degree murder, if I understand it right.

"Q. That is, you would have conscientious scruples against doing your duty under the law as an officer of this court and as a citizen of our country—is that right? A. I think so.

"Q. Well, sir, you can stand down. If we had fewer men of such view, we would have less crimes committed.

"(Juror excused.)"

"Q. You mean to say that you wouldn't follow the law as given you by the court in considering your verdict? A. I couldn't do it with the right feeling.

"Q. How? A. I don't believe in capital punishment; I couldn't do it with the right feeling.

"Q. Well, you had nothing whatever to do with the making of the law, had you? A. I know it.

"Q. How? A. I know I didn't.

"Q. Well, so long as it is the law, whatever the law is, as made by the lawmaking power, you wouldn't be willing as a citizen and an officer of this court to enforce it? A. Not with that feeling.

"Q. That is what I am talking about. You have some sort of a notion it is the duty of a citizen to obey the law, do you? A. Yes, sir.

"Q. You have some sort of a notion it is the duty of any good citizen called on to aid in the enforcement of the law to enforce the law as written, have you not? A. Yes.

"Q. Now you say you have conscientious scruples against performing your duty here as a citizen under the law? A. Yes.

"Q. How? A. How is that, I didn't understand it.

"Q. You say—you tell us, you have conscientious scruples, since you have been called here as an officer of the law to enforce the law, against enforcing the law as it is written? A. Not since I have been called here; I have previous had that.

"Q. But you were called here— A. Yes, sir.

"Q. Called here in the manner provided by the law for the purpose of administering justice? A. Yes, sir.

"Q. Now, since you are here, you tell the court that you have conscientious scruples against performing your duty as a citizen and enforcing the law as it is written? Is that what I am to understand? A. Yes.

"The Court: All right, you may stand down."

[1] In capital cases the jury determine for or against capital punishment. Criminal Code (Act March 4, 1909, c. 321), § 330, 35 Stat. 1152 (Compiled St. 1916, § 10504). Considering the delicate position in which every juror must have felt himself placed by the circulars and letters which had been sent with the purpose of affecting his judgment upon that issue, and brought out in the examination of the panel, we deem the above remarks of the court prejudicial to a proper determination by the jury of that matter. The examination upon the point of any prejudice against capital punishment should have been confined to an ascertainment of the juror's views and the strength thereof, with the sole object of determining whether he would approach the issue of capital punishment in the proper frame of mind.

[2-4] It seems proper to notice three other matters called to the attention of the court. The attack upon the jurisdiction of the court is not well taken. The claim that defendant would be entitled to the testimony of other convicts is sustained by the cases of Rosen v. U. S. and Pakas v. U. S., 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. 406. It is also objected that in the opening address the district attorney used prejudicial language. Defendant was indicted while a convict at the Leavenworth penitentiary for killing E. A. Barr, a prison guard. In his statement the district attorney said:

"Mr. Barr came in contact from time to time with this defendant who was a convict there, and I may say that this defendant was a convict there pursuant to a conviction had in the district of Alaska in 1910, at which time and in which district he was there convicted of the crime of murder, this very man, and on account of that conviction is serving a term here in this prison."

The reference to the crime for which defendant was confined was unnecessary and prejudicial.

The judgment is reversed.