### WILLIAM MORRIS v. KRAMER BROTHERS COMPANY.

(Filed 28 September, 1921.)

**Instructions— Courts— Improper Remarks— Prejudice— Statutes— New Trials.**

In an action to recover damages for personal injury, where a release from liability is set up and relied upon, with evidence to support it, it is reversible and ineradicable error for the judge, during the trial and in the presence and hearing of the jury, to stop the testimony of the defendant's witness, a nonresident attorney who had procured the release, and question him upon the professional ethics involved and the standard in his own State, of such conduct; which reflected on the witness, and no effort being made on his part to remove, by his instruction or admonitions to the jury, the prejudice thus necessarily occasioned can have that effect, and a new trial before another jury will be ordered on appeal.   C. S., 564.

Appeal by defendant from *Allen, J.,* at January Term, 1921, of Pasquotank.

This action was brought to recover damages for injuries alleged to have been caused by defendant's negligence. Plaintiff had been employed by the defendant to work in his sawmill, and was engaged at the time of his injury on the platform in loading sawed lumber upon trucks preparatory to hauling it to the drykilns, or to the yard of the mill. The lumber was brought to the platform by a chain or conveyor, and while so performing his duties he was knocked from the platform by a heavy board, which had fallen from the conveyor, and injured. Plaintiff alleged negligence in several particulars. Defendant answered and denied that there was any negligence on their part, and pleaded assumption of risks and contributory negligence.

There was much evidence taken upon the questions of negligence, contributory negligence and assumption of risks, and exceptions entered to rulings, but they need not now be considered, as we are of the opinion that a material error was committed in another respect. Defendant pleaded that the plaintiff had executed a release to them from all damages growing out of said alleged injury, and Mr. Hoag, an attorney at law, of Norfolk, Va., who procured the release, was examined at length as a witness for the defendant in regard to its execution, the plaintiff having alleged that the release was obtained by fraud, or mistake. The following appears in the record of the case as to what occurred between the judge and the witness during the redirect examination of the witness, Mr. Hoag:

"At this point his Honor, the jury being present, announced that he wanted to ask the witness a question, and did so as follows:

"Q. You say you are a lawyer in Virginia? A. 'Yes, sir.'

"Q. Is it in accordance with your idea of professional ethics in Virginia for a lawyer to go to a man and approach him if he has not brought any lawsuit and get written statements from him? A. 'Absolutely so. We do not approach him if he has employed a lawyer first, but if he has not we do that quite frequently. It is considered ethical.'

"Q. I wish you would show be one of the rules.

"To all the foregoing questions by the court the defendant in apt time objected. Objection overruled and defendant excepts.

"His Honor continued: I would like to see the ethics for my own information. Is it ethical for a lawyer of one State to go into another State and prepare a case when he is not licensed in that State? A. 'We have done that so frequently in Virginia without any question of the bar, just as a matter of information so I could make a settlement, I came here to ascertain the facts.'

"To the foregoing questions by the court the defendant in apt time objected. Objection overruled and defendant excepts.

"The court continues: I don't want the jury to be prejudiced against the witness on account of my asking these questions. It is so unusual for a lawyer from another State to come into the State doing professional work that I wanted to see what standard he was governed by.

"Q. You don't practice in this State? A. 'No, sir.'

"I think it is the duty of the court to look into those matters and protect anything wrong going on, but I don't see anything wrong going on in this case. I think it is proper for the court to inquire, but the jury is not to consider it at all, it is a matter between witness and court, and he being a lawyer.

"To the foregoing questions and statements by the court the defendant in apt time objected. Objection overruled and defendant excepts."

This dialogue between the judge and the witness was duly and specially excepted to by the defendant as it progressed, and has been assigned as error by it.

There was a verdict, followed by a judgment, for the plaintiff, and defendant appealed.

*Meekins & McMullan* for plaintiff.

*Hughes, Little & Seawell, and W. A. Worth* for defendant.

WALKER, J., after stating the pertinent facts: We will repeat here what we said in *Bank v. McArthur,* 168 N. C., 48 at page 52: "We are of the opinion that the remark of the learned and unusually careful judge, in regard to calling a certain witness, should not have been made, and was calculated, as an intimation, if not a direct expression, of

opinion upon the facts, to prejudice the plaintiff, and is forbidden by the statute, which provides: 'No judge, in giving a charge to a petit jury, either in a civil or criminal action, shall give an opinion as to whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon. There have been numerous decisions upon this statute, and this Court has shown a fixed purpose to enforce it rigidly as it is written. There must be no indication of the judge's opinion upon the facts, to the hurt of either party, either directly or indirectly, by words or conduct. The judges should be punctilious to avoid it, and to obey the statutory injunction strictly. We are absolutely sure that they fully desire to do so, and their occasional expressions which have come before this Court for review and held to be violations of the statute have evidently been inadvertent, but none the less harmful. The evil impression when once made upon the jury becomes well-nigh ineradicable." Manly, J., who was one of the most eminent and just of our judges, said in S. v. Dick, 60 N. C., 440: "He (the presiding judge) endeavored to obviate the effect of his opinion by announcing in distinct terms the jury's independence of him; but this was not practicable for him to do. The opinion had been expressed and was incapable of being recalled. The object (of the statute) is not to inform the jury of their province, but to guard them against any invasion of it. The division of our courts of record into two parts—the one for the judging of the law, the other for the judging of the facts—is a matter lying on the surface of our judicature, and is known to everybody. It was not information on this subject the Legislature intended to furnish, but their purpose was to lay down an inflexible rule of practice, that the judge of the law should not undertake to decide the facts. If he cannot do so directly, he cannot indirectly; if not explicitly, he cannot by inuendo. What we take to be the inadvertence of the judge, therefore, was not cured of its illicit character by the information which he immediately conveyed. The error is one of the casualties which may happen to the most circumspect in the progress of a trial on the circuit. When once committed, however, it was irrevocable, and the prisoner was entitled to have his case tried by another jury." And to the same effect did Hoke, J., speak in S. v. Cook, 162 N. C., 586, citing and approving S. v. Dick: "The learned and usually careful judge was evidently conscious that he had probably and by inadvertence prejudiced the prisoner's case, for he added: 'But the court has no right to express an opinion about the case,' but the forbidden impression had already been made, and as to the vital portion of the prisoner's plea, and on authority, the attempted

correction by his Honor must be held inefficient for the purpose." So in *S. v. Ownby,* 146 N. C., 678, we said: "The slightest intimation from a judge as to the strength of the evidence or as to the credibility of a witness will always have great weight with the jury, and therefore we must be careful to see that neither party is unduly prejudiced by an expression from the bench which is likely to prevent a fair and impartial trial." And again in the same case: "We know that his Honor unguardedly commented upon the testimony of the witnesses, but when the prejudicial remark is made inadvertently, it invalidates the verdict as much so as if used intentionally. The probable effect or influence upon the jury, and not the motive of the judge, determines whether the party whose right to a fair trial has thus been impaired is entitled to another trial." Like views and cautionary requests to the judges were stated in *Withers v. Lane,* 144 N. C., 184, as follows: "The learned and able judge who presided at the trial, inspired, no doubt, by a laudable motive and a profound sense of justice, was perhaps too zealous that what he conceived to be right should prevail; but just here the law, conscious of the frailty of human nature at its best, both on the bench and in the jury box, intervenes and imposes its restraint upon the judge, enjoining strictly that he shall not in any manner sway the jury by imparting to them the slightest knowledge of his opinion of the case." The case of *Perry v. Perry,* 144 N. C., 330, repeats this injunction to observe the mandate of the statute, for it is there said: "Any remarks by the presiding judge, made in the presence of the jury, which have a tendency to prejudice their minds against the unsuccessful party, will afford ground for a reversal of the judgment." It is very strongly and urgently reiterated in *Park v. Exum,* 156 N. C., 228, as follows: "The Court has always been swift to enforce obedience to our law which forbids a presiding judge to express an opinion on the disputed facts of the trial, and under numerous decisions construing the statute, we must hold this remark of his Honor, in the presence of the jury and before the verdict, to be reversible error." We have cited these cases in order to show how very carefully this Court has guarded the rights of parties under the statute (Revisal of 1905, sec. 535; C. S., sec. 564). There are other and more recent cases in which reflections by the presiding judge upon a witness have been followed by reversals and the attention of the judges directed to the language and meaning of this important statute, and among others are *Chance v. Ice Co.,* 166 N. C., 495; *S. v. Rogers,* 173 N. C., 755; *Ray v. Patterson,* 165 N. C., 512, and in some of those decisions the disparagement of the witness was not so pronounced, and certainly less harmful, than was the language of the judge in this case.

It was considered so essential to protect the right of trial by jury that

the statute was broadly worded and was among the earliest of our remedial enactments, and, while it refers in terms to the charge, it has always been construed as including the expression of any opinion, or even an intimation of the judge, at any time during the trial, calculated to prejudice either of the parties. *Park v. Exum,* 156 N. C., 228; *Withers v. Lane,* 144 N. C., 184; *S. v. Dick,* 60 N. C., 440; Pell's Revisal, sec. 535.

The learned and just judge attempted to correct the error into which he fell by the remarks he made and the criticism of Mr. Hoag, and his conduct as an attorney acting in behalf of his client, but there is nothing better settled by our cases than that he cannot do so, for the harm is ineradicable. *S. v. Dick, supra; S. v. Cook, supra.* When the damage is once done it cannot be repaired because, as we know, the baneful impression on the minds of the jury remains there still. What a judge says in condemnation of a witness is generally fatal to the party in whose behalf he testifies. The witness stands before the jury not only impeached, but thoroughly discredited. What the judge says in disparagement of him counts for far more than witnesses or counsel may utter against him. It would be dangerous to hold otherwise. There are other cases than *S. v. Dick, supra,* and *S. v. Cook, supra,* in which this Court has held that the impeachment of a witness, emanating from the judge, becomes so deep-seated in the minds of the jury as to be beyond the reach of the judge, however much he may endeavor to counteract its evil influence, and it will, at least, leave the party once prejudiced by it so completely handicapped as to prevent that fair and impartial trial which the law guarantees to him and to which he is justly entitled. One word of untimely rebuke of his witness may so cripple a party and blast his prospects in the case as to leave him utterly helpless before the jury.

It must not be understood that we think that the judge was at all sensible, at the time, of the effect of his remarks upon the jury, for we know that he was not, and that they were made inadvertently and unconsciously. The case then is brought directly within the language of this Court quoted from *Withers v. Lane, supra.* For the judge, even to intimate that the conduct of the witness, an attorney, was unprofessional and unethical was undoubtedly calculated to prejudice the defendant, whatever in the way of explanation or atonement of it he may have said afterwards, and however praiseworthy the motive or intention of the judge may have been. The enforcement of a moral principle, when time and occasion call for it, is highly commendable, but the statute does not permit it to be done from the bench when the rights of one of the parties may be seriously impaired, if not destroyed, by it. We close this branch of the discussion with what was said by the Court in *Chance v. Ice Co.,*

166 N. C., 495, at page 497: "We are quite sure that it was not intended to prejudice the defendant's case by the able and painstaking judge who tried this case, but it undoubtedly was well calculated to prejudice the jury against that particular witness, and was practically an expression of opinion upon the part of the judge as to the credibility of such witness." To the same effect is the language of the *Chief Justice* in *Ray v. Patterson,* 165 N. C., 512.

As the case must go back for another trial, it is not necessary to discuss the other questions raised. We may, however, say that there appears to be some evidence of negligence on the part of the defendant, and the references to the insurance company, in one phase of the case, were relevant, though they may, in some respects, have gone too far.

We order a new trial for the error of the judge in his remarks to Mr. Hoag, defendant's witness.

New trial.