STATE OF NORTH CAROLINA v. BURL TILLMAN McSWAIN

No. 7227SC558

(Filed 23 August 1972)

1. **Criminal Law § 99— examination of prospective jurors — expression of opinion**

In a first-degree murder prosecution, the trial court committed prejudicial error by expressing an opinion in propounding questions to prospective jurors to determine their views on capital punishment.

2. **Criminal Law §§ 5, 111— insanity as defense — jury instructions**

The trial court did not err in refusing the jury's request that they be informed as to the result of their finding defendant in a first-degree murder prosecution not guilty by reason of insanity.

APPEAL by defendant from *Martin, Judge,* 31 January 1972 Session, Superior Court, GASTON County.

On 1 August 1966, defendant was indicted for murder. He was committed to Dorothea Dix Hospital under the provisions of G.S. 122-91 and, on 21 November 1966, he was declared incompetent to stand trial and was recommitted. On 21 October 1971, defendant was returned to Gaston County, the Superintendent of Dorothea Dix Hospital having found that he was competent to stand trial. On 9 December 1971, while defendant was still in jail, his wife caused to be served on him summons and complaint in an action for divorce. On 11 January 1972, after hearing, defendant was found by the court to be competent to stand trial and the matter came on for trial on 31 January 1972. Defendant entered a plea of not guilty

upon his arraignment on the charge of first-degree murder and was found guilty of voluntary manslaughter. From judgment entered on the verdict, defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Jones, for the State.*

*Tim L. Harris, by Don H. Bumgardner, for defendant appellant.*

MORRIS, Judge.

Defendant has failed to assign his exceptions as error as required by our rules. However, he has listed the exceptions upon which he relies under the heading "Grouping of Exceptions and Assignments of Error." Because of the gravity of the charge and the importance of the questions raised, we have chosen to consider the appeal on its merits and will refer to the questions presented as exceptions carrying the numbers given by defendant in the record and in his brief.

[1] By exception No. 1 defendant contends that by certain questions propounded to prospective jurors in determining their views on capital punishment, the court expressed an opinion in violation of G.S. 1-180, thus committing prejudicial error. Eight of the prospective jurors stated that they had conscientious scruples against capital punishment. Each was challenged by the State for cause. Before ruling on the challenge, the court questioned each of the eight. Examples of portions of the colloquy between the judge and some of the jurors, in the presence of the other prospective jurors, follow:

"COURT: You don't believe in capital punishment; all right; but regardless of what your personal beliefs are, is there any set of facts which could arise in a case in which you would consider returning a verdict of guilty which would require the imposition of the death penalty?

A. No, sir.

COURT: You would not return a verdict requiring the death penalty, regardless of what the facts were in the case?

A. That's right.

COURT: Even if it was your own brother or your mother who was the victim in the case?

A. Yes; that's right.

COURT: So if you were a juror in this case and if you were satisfied beyond a reasonable doubt that the defendant is guilty, you would automatically vote to give him life imprisonment?

A. That's right.

COURT: Regardless of what the facts were?

A. That's right.

.  .  .

COURT: If you were a juror, is there any fact situation which you would consider bad enough or serious enough for you to consider returning a verdict of guilty which would require the imposition of the death sentence?

A. No, sir.

COURT: Now, you couldn't do this no matter how bad the facts were?

A. No.

COURT: Even if it was your child or your husband who was the victim of the assault?

A. It's true. I could not.

COURT: So, Mrs. McIntosh, if you were on the jury in this case and if you were satisfied beyond a reasonable doubt that the defendant was guilty of first degree murder, then I take it you would automatically vote every time to grant him life imprisonment?

A. That's true.

COURT: Regardless of what the facts are?

A. Yes.

COURT: And you would not consider the death penalty as a verdict?

A. No, sir.

.  .  .

COURT: Mrs. Jonas, have you heard what I have said so far about this problem?

A. Yes, sir.

COURT: As a juror, is there any case where you would consider the facts to be bad enough or serious enough so if you were a juror, you would consider the possibility of returning a verdict which would require the imposition of the death sentence?

A. No, I don't think I could.

COURT: You say you don't think you could?

A. No, sir.

COURT: You could not do that, no matter what the facts were?

A. No.

COURT: No matter even if it was your husband or your brother who was the victim?

A. No, I couldn't.

. . .

COURT: Mrs. Leonard, let me ask you this: In your mind is there any fact situation that you could think of which you would consider as a juror to be sufficient for you to return a verdict of guilty, requiring a sentence of execution?

A. I couldn't do that.

COURT: Even if someone put a bomb on an airplane and blew up fifty small school children and killed them all and if you were a juror on that case, you would not consider execution?

A. I don't think I could.

COURT: So if you were on the jury in this case, if you were satisfied beyond a reasonable doubt that this defendant was guilty of murder in the first degree, you would always vote for a verdict which would require life imprisonment?

A. That's right.

COURT: Regardless of the facts?

A. Yes, sir."

Defendant argues on appeal that as in *State v. Canipe,* 240 N.C. 60, 81 S.E. 2d 173 (1954), the questions propounded by the trial judge "had a logical tendency to implant in the minds of the trial jurors the convictions that the presiding judge believed that the prisoner had killed . . . (the deceased) in an atrocious manner, that the prisoner was guilty of murder in the first degree, and that the prisoner ought to suffer death for his crime." 240 N.C., at p. 65. We agree that the presiding judge here, as in *Canipe,* "inadvertently over-stepped his self appointed bounds and unintentionally expressed an opinion on the facts adverse to the prisoner." 240 N.C., at p. 65. The State argues that *Canipe* has no application, because there the defendant was convicted of murder in the first degree and sentenced to death; whereas here, the defendant was convicted only of manslaughter, and no prejudice could exist.

[2] We cannot say with such clarity of conviction that defendant suffered no prejudice. After the jury had deliberated for more than an hour they returned to the courtroom and reported that they were "hung up" on question number one, which was whether defendant had sufficient mental capacity or ability to distinguish right from wrong and to understand the nature, quality, and consequences of his act. The court instructed them that if they answered that question " 'No,' that would be a finding that the defendant, McSwain, was insane and it would be your duty then to find him not guilty of all charges." Whereupon the jury asked whether he could be "committed to an institution or . . . turned out free." The court instructed them that that was not a question for their concern. The court no doubt considered himself bound, as do we, by *State v. Bracy,* 215 N.C. 248, 1 S.E. 2d 891 (1939). In *Bracy* the Court held that a defendant charged with a capital felony, whose defense is lack of mental capacity to commit the crime of murder in the first degree, is not entitled to have the jury know the statutory provisions allowing his detention in a State hospital, and that his discharge can only be procured in the manner provided by statute. Though the holding was couched in general terms, we note the court's comment as follows: "All the evidence was to the effect that the defendant was guilty of murder in the first degree. The killing was willful, deliberate and premedi-

tated for the purpose of robbing the deceased. This was so found by the jury beyond a reasonable doubt." 215 N.C., at p. 259. We note also the lack of evidence in that case with respect to insanity. While we may not regard the divulgence of the information requested as informing the jury of the *punishment* for the crime, the imposition of which is the responsibility of the court; nevertheless, on the authority of *Bracy,* we are compelled to overrule defendant's exception to the court's denying the jury's request that they be informed as to the result of their finding defendant not guilty by reason of insanity.

The jury later returned to the courtroom and asked whether they could see a transcript of the questions and answers of the State and the defense with respect to the three psychiatrists. The court advised them that no transcript was available, and they would have to rely on their memories. The jury then asked if they could have read to them the answers the psychiatrists gave to the solicitor. This request was also denied.

The record, it seems to us, speaks clearly of the jury's concern and confusion. They were uninformed as to whether defendant would remain in custody for treatment if found not guilty by reason of insanity. We cannot say that the questions propounded by the court did not implant in their minds a strong inference that the court considered defendant guilty and deserving of punishment even though they might have been convinced of defendant's insanity at the time of the killing.

Although there may be cases in which the type of questions propounded might not be prejudicial, we cannot approve them in any situation. Suffice it to say, we are of the opinion that in this case the probability of prejudice to defendant exists and he must, therefore, be granted a

New trial.

Judges BROCK and HEDRICK concur.