STATE OF NORTH CAROLINA v. TOMMY McCORMICK

No. 7815SC39

(Filed 6 June 1978)

1. **Constitutional Law § 30— failure to comply with discovery order—admissibility of evidence**

   A written statement of a witness was not barred by the trial court's order restricting admission of evidence not given defendant pursuant to a pretrial discovery order, though the State failed to provide defendant with a copy of the statement prior to trial, since the court's order provided that such evidence could not be introduced without first obtaining permission of the court outside the presence and hearing of the jury, and the State, after mentioning the witness's statement, obtained permission to introduce it from the court during a conference at the bench.

2. **Criminal Law § 99.3— failure to hear defendant on objection—no error**

   There was no error prejudicial to defendant in the trial court's failure to hear him upon his objection to a line of questioning, since the court had just heard defendant on an objection to the same line of questioning.

3. **Criminal Law § 99.5— court's use of word "harassed"—no expression of opinion**

   The trial court's use of the term "harassed" in describing a witness for whom the State had requested permission to leave the courtroom is not approved by the Court on appeal, but its use did not amount to an expression of opinion necessarily harmful to defendant.

4. **Criminal Law § 99.10— court's examination of defendant—error**

   In a prosecution for felonious breaking and entering and felonious larceny where the indictment alleged that the crime took place on or about March 11 and defendant put on extensive evidence concerning his whereabouts on March 11, the trial court's questions, put to defendant after counsel for both defendant and the State had questioned him, as to his whereabouts on March 8-10 in no way clarified evidence about which defendant had been testifying,

but instead amounted to a cross-examination of defendant which was calculated to impeach defendant and deprecate his testimony before the jury.

APPEAL by defendant from *David I. Smith, Judge.* Judgment entered 19 August 1977, in Superior Court, ALAMANCE County. Heard in the Court of Appeals 4 May 1978.

Defendant was indicted for felonious breaking and entering and for felonious larceny. He waived arraignment and entered a plea of not guilty. Prior to trial, defendant made a request for voluntary discovery and, thereafter, a motion for discovery pursuant to G.S. 15A-902(a). Having received no documents in response to his request, defendant filed a motion *in limine* to prohibit the State from introducing any evidence not disclosed pursuant to his motion. Defendant's motion was granted.

At trial, the State put on evidence tending to show that on 11 March 1976, Thomas L. Clark discovered that his twelve gauge Ithaca shotgun and .44 Magnum pistol were missing from his home. Robert Dickey, who was serving time for convictions for various breakings and enterings, testified that he and defendant entered the Clark home sometime early in 1976 and took the shotgun and pistol.

Defendant put on evidence tending to show that on 11 March he stayed at his sister's home all day taking care of his niece who was sick. He contended, and put on evidence tending to show, that witness Dickey testified as he did because defendant and Dickey had quarrelled when defendant discovered that Dickey and another had taken a stereo and television from the home of two women defendant had met.

The jury returned a verdict of guilty of felonious breaking, entering, and larceny, and the court sentenced defendant to six to eight years imprisonment for the breaking and entering and to a suspended five year consecutive sentence for the larceny count. Defendant appeals.

*Attorney General Edmisten, by Associate Attorneys Douglas A. Johnston and Lucien Capone III, for the State.*

*John P. Paisley, Jr., for defendant appellant.*

ARNOLD, Judge.

[1]   Defendant first contends that the trial court erred in allowing into evidence certain statements made by witness Dickey. According to defendant's contention, these statements were barred by the court's order granting defendant's motion *in limine* for failure of the State to turn over documents as required by Article 48 of Chapter 15A of the General Statutes. We do not agree.

The record disclosed that defendant in his motion for discovery requested "[a]ll written . . . statements of a co-defendant which the State intends to offer at trial as provided by G.S. 15A-903(b)." Dickey, of course, was not a co-defendant and, thus, the State was not bound to submit copies of Dickey's statement under this portion of defendant's motion. However, defendant also requested:

> "Any books, papers, documents, photographs, motion pictures, mechanical or electronic recordings, and/or any other tangible objects which the State intends to offer at trial, specifically but not limited to any documents showing ownership of the twelve-gauge Ithaca shotgun and the forty-four Magnum pistol, in the name of Thomas L. Clark."

We believe this portion of defendant's request clearly included the written statement by Dickey and it should have been submitted to the defendant. Nevertheless, the order filed by the court granting defendant's motion *in limine* did not irreversibly deny the State the right to put on evidence. The order stated in part:

> NOW, THEREFORE, IT IS ORDERED as follows:
>
> \*   \*   \*   \*
>
> "That the State and counsel for the State are further ordered to instruct the State, its witnesses and all its counsel, not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, either directly or indirectly any evidence and/or other information requested in the defendant's Request for Voluntary Discovery and/or Motion for Discovery, *without first obtaining permission of the Court outside the presence and hearing of the jury . . . ."* [Emphasis added.]

The record shows that the court sustained defendant's objection to the reading of the statement, and then the following occurred:

"MR. ALDRIDGE: May I approach the bench, your Honor?

"COURT: Yes.

(Conference at the bench.)

"COURT: Objection is overruled.

"Members of the jury, this—the following testimony of Mr. Morton is for the sole purpose of corroborating the testimony of Mr. Robert Allen Dickey, a previous witness, if in fact it does corroborate Mr. Dickey's testimony. Again, you will decide whether or not it does. It is admitted for no other purpose, and you will consider it for no other purpose."

Under the facts as presented, therefore, we believe that the State complied with the court's order restricting admission of evidence. The error of allowing mention of the document prior to the court's determination of admissibility was rendered harmless by the court's subsequent ruling.

We next consider defendant's argument that the trial court erred in unfairly expressing an opinion in violation of G.S. 1-180. G.S. 1-180 forbids the trial judge from expressing an opinion as to what facts of a case have been established. Defendant argues that the trial court expressed an opinion at three different points during the trial.

[2] First, defendant contends that the court erred by failing to allow him to be heard upon the Court's ruling on a motion. Defendant's argument is based on the following portion of the record:

"Q. Was anyone with you when you went to this residence?

"A. Yes, sir.

"MR. PAISLEY: Your Honor, again object and would like to be heard on this objection.

"COURT: Overruled.

State v. McCormick

"A. Yes, sir, your Honor.

MR. PAISLEY: Your Honor, I request to be heard.

"COURT: Denied. Move on.

"A. Yes, sir."

We cannot find in this portion of the record, and defendant does not show us, any prejudice resulting to him. He simply argues that the trial court "did not even extend to defendant's counsel the courtesy to be heard upon his objection, tending to discredit defendant's counsel and his case in the eyes of the jury." Taking into consideration the fact that the trial court had just heard defendant on an objection to this line of questioning, we find no error prejudicial to defendant.

[3] We also find no prejudicial error in the trial court's use of the word "harassed" in the following discussion:

"(At this time, the State requested that Mr. Clark be permitted to leave the courtroom.)

"MR. PAISLEY: Your Honor, we're not sure; but particularly after we put Mr. McCormick on the stand, we may have a question of him at that time depending on—

"COURT: He's been down here long enough and been harassed enough; so I'm going to let him go. He can—unless you can show me some reason why you need him any longer."

While we fail to understand the trial court's use of the term "harassed" and while we do not approve it, we cannot find that this expressed an opinion necessarily harmful to defendant.

[4] Finally, defendant argues that the trial court erred in posing certain questions to defendant while defendant was on the witness stand and after counsel for both defendant and the State had questioned him. This argument has merit. We agree that the trial court, in questioning the defendant, expressed an opinion in violation of G.S. 1-180.

The record is unclear about when the alleged breaking and entering occurred. The indictment stated "on or about the 11th day of March, 1976"; there was evidence to show that the Clarks

had first missed the shotgun and pistol on the 11th day of March, and defendant put on extensive evidence concerning his whereabouts on March 11. No other date was mentioned until the trial court asked the following questions of defendant:

"COURT: And what did you do on March the 10th, Mr. McCormick? The morning of March the 10th?

"A. About the—that—that whole time I—I never—I never did usually get up—well, about that time, you know, I'd usually sleep until about 12:00 or 1:00 o'clock, something like that.

"COURT: What did you do March the 9th?

"A. About the same time, you know, that was—at that time, period of time, I was playing a lot of pool over at the Idle Hour in Burlington and I'd usually just stay—hang around the house and sleep and rest until, you know, it was time for the pool room to open and I'd go over there and usually stay over there until closing time and then I'd come home.

"COURT: March the 8th?

"A. Sir?

"COURT: What did you do on the morning of March the 8th?

"A. I guess the same—well, about the same—like I said, the whole time, about the whole time of that—say that month it was, you know, the pool room was—it was a good time for playing pool. It was a lot of people around playing pool, coming through and everything. I played a lot of pool."

While a trial court may ask competent questions to a witness in order to clarify his testimony, he must exercise extreme care that he not express an opinion on the facts. *State v. Kimrey*, 236 N.C. 313, 72 S.E. 2d 677 (1952). We find that here, as in the *Kimrey* case, the trial court's questions amounted to a cross-examination of defendant which was calculated to impeach defendant and deprecate his testimony before the jury. As far as we can tell, the questions propounded in no way clarified evidence about which defendant had been testifying; indeed, they related solely to defendant's activities on days not previously mentioned and had

the effect of impeaching defendant's recollection as to his activities on 11 March. While this may have been a proper line of questioning by the district attorney, it was clearly not proper when undertaken by the trial court. G.S. 1-180 was violated and defendant is entitled to a new trial.

New trial.

Judges BRITT and ERWIN concur.