STATE OF NORTH CAROLINA v. GREGORY LYNN COX AND ROBERT WILEY NORWOOD

No. 7915SC36

(Filed 19 June 1979)

**Criminal Law §§ 73.1, 99.10— hearsay testimony—improper questions by trial judge**

In a prosecution for armed robbery, the trial judge committed prejudicial error in the admisson of a deputy sheriff's rank hearsay testimony concerning criminal activity by defendants in another county and in his prosecutorial interrogation of defendants about matters which were the subject of the hearsay testimony.

APPEAL by defendants from *Smith (David I.), Judge.* Judgments entered 17 August 1978 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 4 April 1979.

Both defendants were charged with armed robbery of Larry Wood at the Village Motel on 9 January 1978. Defendant Norwood was found guilty as charged, and the judgment imposed a prison term of 25 to 40 years. Defendant Cox was found guilty of common law robbery, and the judgment imposed a prison term of 8 to 10 years.

## EVIDENCE FOR THE STATE

Larry Wood, in the early morning hours of 9 January 1978, was working as night auditor at the Village Motel in Graham. Defendant Cox and Don Cox (also charged but during trial tendered a plea of guilty), who had checked in as guests a few hours earlier, and defendant Norwood were in the game room. Norwood went to the bathroom. He returned with a hammer, from the rear struck Wood on the head, told him that he was being robbed, and ordered him to lie on the floor in the game room. Defendant Gregory Cox told Wood that Norwood had a gun and wanted to use it, but that if he would be quiet Norwood might not do anything. Wood heard the cash register open. About $150.00

was missing. Defendant Cox came to the game room and took $60.00 from Wood's wallet. Defendant Cox told Wood that he and his brother were getting $10.00 each to help Norwood in the robbery. They left in a 1975 Granada. Investigation revealed that the car was stolen from the Moore County Airport.

### DEFENDANT NORWOOD'S TESTIMONY

He, defendant Cox, and Don Cox went to the Village Motel, and defendant Gregory Cox paid for a room. They went to the game room about 11:30 p.m. and played pool. He left them about midnight, went to the room, and went to sleep. They awakened him about 2:30 a.m., and they rode back to Sanford.

### DEFENDANT COX'S TESTIMONY

Defendant Norwood struck Wood on the head with a hammer. Wood's head was bleeding, so he got a towel for him. Norwood took Wood's wallet. Norwood told him and his brother to get in the car. He did not go to the room and awaken Norwood. He did not receive any money from Norwood.

*Attorney General Edmisten by Assistant Attorney General Thomas F. Moffitt for the State.*

*John D. Xanthos for defendant appellant Cox; Donnell S. Kelly for defendant appellant Norwood.*

CLARK, Judge.

The record on appeal reveals that during cross-examination of State's witness, Deputy Sheriff Richard Frye, by counsel for defendant Cox, the following occurred:

"I checked out the 1975 Ford Granada. As to who drove that up to the custodial office, I was not present when the vehicle was drove up to the Lee County Sheriff's Department and parked. I don't recall who drove the vehicle up there.

Q. Well, did your investigation reveal that Mr. Gregory Cox had ever had possession of that vehicle?

A. Later investigation from another County revealed that all three of them had been in this—this vehicle, that the vehicle was—

MR. KELLY: OBJECTION and move to strike.

COURT: OVERRULED. Motion denied.

A. That the vehicle was stolen from the Moore County Airport —

Q. I didn't ask you that, Mr. Frye. You know that.

COURT: OVERRULED. You asked the question. Now answer the question.

MR. XANTHOS: I asked him, if your Honor please, —

COURT: I said OVERRULED.

MR. XANTHOS: May we have the question read back?

COURT: Answer the question.

A. The vehicle was stolen from the Moore County Airport. Also a breaking and entering and larceny had occurred at the Moore County Airport. All three of these Defendants were indicted for the breaking and entering and, as I recall, was charged with larceny of the motor vehicle from the Moore County Airport. The vehicle was —

MR. KELLY: Your Honor, I OBJECT as to Defendant Norwood and move that all of that be stricken, may it please the Court.

COURT: OVERRULED. Motion denied.

MR. XANTHOS: If your Honor please, Greg Cox moves that it be stricken. It's not responsive.

COURT: OVERRULED.

Q. Well, now will you answer my question, Mr. Frye?

COURT: He answered your question. Move on.

At no time did my investigation reveal that the Defendant, Gregory Cox had possession of vehicle or was driving it.

Q. Now you said something in your Direct Examination about the '75 Ford Granada as being in the possession of Mr. Norwood, is that correct, sir?

MR. KELLY: OBJECTION as to Norwood, sir.

COURT: OVERRULED.

A. As I recall, I was informed that it was in the possession of Mr. Norwood. I do not—like I say, I wasn't present when the vehicle was brought to the Lee County Sheriff's Department.

MR. KELLY: Motion to strike, your Honor.

COURT: Motion denied."

The answer was not responsive to the question. The witness had no personal knowledge of their activities in Moore County. The State, over valid objections, was permitted by the court to show by this evidence that the 1975 Granada was stolen from the Moore County Airport, that defendant Cox, Don Cox and defendant Norwood were charged with larceny of the car and also with breaking and entering in Moore County. The evidence was rank hearsay and obviously inadmissible.

When examination of defendant Cox as a witness had been completed by counsel, the trial judge then conducted an examination of Cox as follows:

"COURT: 'Did you ever tell Mr. Wood that Mr. Norwood had a gun and for Mr. Wood to do whatever he said?'

Cox answered that he did not say that.

COURT: 'You never—you never said that?'

Again, Cox said that he had not said that.

COURT: 'How long had you been with Mr. Norwood? You said you'd known him about five days?'

Cox said that he had.

COURT: 'Had these other occurrences already happened in Moore County and Lee County before you came to Alamance?'

He answered that they had—about two days prior to coming to Alamance County.

COURT: 'And you were still going around with him?'

A. 'No, Sir, I'm not.'

COURT: 'I say you were when you came to Alamance after all of these things had happened in Moore and Lee County?'

A. 'I was just riding with him, yes, sir.' "

When direct- and cross-examination of defendant Norwood was concluded the trial judge asked him two questions: (1) "Why did you come to Alamance County that night?" (2) "You come through Burlington to go back to Sanford?" The questions did not clarify any testimony elicited by direct- or cross-examination.

These questions by the court cannot qualify as clarifying questions. They emphasized the hearsay testimony of Deputy Sheriff Frye relating to the criminal activity of the defendants in Moore County. The trial judge may not go beyond clarification and, in reality, conduct a cross-examination which is calculated to impeach a defendant and deprecate his testimony before the jury. *State v. McCormick*, 36 N.C. App. 521, 244 S.E. 2d 433 (1978); *State v. Dickerson*, 6 N.C. App. 131, 169 S.E. 2d 510 (1969).

The evidence of defendants' guilt is substantial. The victim's identification of the defendants was not challenged. And we must consider defendants' assignments of error in light of the rule that a new trial will be granted only if the error is prejudicial or harmful, and not mere technical error which could not have affected the result. *State v. Cottingham*, 30 N.C. App. 67, 226 S.E. 2d 387 (1976). Nevertheless, the erroneous admission of rank hearsay evidence by the trial judge and his prosecutorial interrogation about matters which were the subject of the hearsay evidence, were so prejudicial to the defendants that we cannot, in good conscious, find that the error could not have affected the result.

The strength of the State's evidence possibly contributed to the prejudicial conduct of the trial judge. Often when presiding over criminal trials the trial judge is impressed by the strength of the State's evidence and concludes that any sane jury would convict, that the defendant is stupidly stubborn in not submitting a guilty plea, that defendant's counsel is a chronic nitpicker, and that both are wasting the time of the court. During such attacks upon his patience if the judge can continue to perform his duties

fairly and impartially, he exercises that sagacious virtue known in legal circles as "judicial restraint." In the case *sub judice* it appears that the trial judge in isolated instances during the prolonged trial failed to exercise sufficient judicial restraint.

The judgment is reversed and we order a

New trial.

Chief Judge MORRIS and Judge ARNOLD concur.